BRAND v. COMMON COUNCIL OF THE CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS — WAR VETERANS — DISCHARGE — COMPENSATION—MANDAMUS.

In war veteran's mandamus proceeding to compel payment of salary as secretary for department of parks and boulevards after common council had eliminated appropriation therefor from annual budget over mayor's veto and duties had been transferred to others in the department at no increase in pay, action of mayor at hearing accorded under the veterans' preference act in confirming dismissal *held*, not final upon plaintiff's rights, if any, where case is one in which discharge became necessary because of state of city's finances (1 Comp. Laws 1929, § 900 *et seq.*, as amended by Acts Nos. 66, 67, Pub. Acts 1931).

2. SAME—WAR VETERANS—COMPENSATION—COMMON COUNCIL—AP-
PROPRIATIONS.

   Act requiring that war veterans be preferred in public employ-
   ment *held*, to have no application in proceeding by veteran
   to compel payment of salary as secretary of department of
   parks and boulevards where, under city charter, his compensa-
   tion was subject to approval of the common council and it
   provided no appropriation for salary for period involved
   (1 Comp. Laws 1929, § 900 *et seq.*, as amended by Acts
   Nos. 66, 67, Pub. Acts 1931).

3. SAME — DEPARTMENT OF PARKS AND BOULEVARDS — SECRETARY —
COMMISSIONER.

   Appointment of secretary by commissioner of parks and boule-
   vards *held*, a permissive function rather than a mandatory
   duty under the Detroit city charter, the position of secretary
   being subordinate to that of commissioner and an employment
   with compensation fixed by council rather than an office with
   a salary as an incident thereto (Detroit Charter, title 4,
   chap. 9, § 3).

4. OFFICERS—VETERANS' PREFERENCE ACT—ABOLITION OF OFFICE.

   The veterans' preference act, like civil service laws, is not in-
   tended to affect the power of legislative or executive officers
   to discharge a veteran in good faith when the office he holds
   is abolished as unnecessary or for reasons of economy and
   not to circumvent the act (1 Comp. Laws 1929, § 900 *et seq.*,
   as amended by Acts Nos. 66, 67, Pub. Acts 1931).

5. SAME—PERPETUATION OF EXISTENCE OF OFFICE.

   The veterans' preference act was not designed for the purpose
   of perpetuating the existence of office (1 Comp. Laws 1929,
   § 900 *et seq.*, as amended by Acts Nos. 66, 67, Pub. Acts
   1931).

Appeal from Wayne; Chenot (James E.), J. Sub-
mitted March 12, 1935. (Calendar No. 38,066.)
Decided April 8, 1935.

Petition for mandamus by Robert G. Brand to
compel the Common Council of the city of Detroit
and others to pay salary as secretary of department
of parks and boulevards. Defendants review order

granting writ by appeal in the nature of certiorari. Reversed.

*John G. Dunn* and *Robert J. Hanley,* for plaintiff.

*Clarence E. Page* and *Walter E. Vashak (Raymond J. Kelly,* of counsel), for defendants.

WIEST, J.  The circuit court for the county of Wayne, by writ of mandamus, commanded officers of the city of Detroit to audit and pay plaintiff compensation as secretary for the department of parks and boulevards, and the city prosecutes review by appeal.

The Detroit city charter, title 4, chap. 9, § 3, provides that:

"The commissioner shall appoint a secretary, * * * prescribe the duties of such secretary, * * * and, * * * subject to the approval of the common council, fix their (his) compensation."

November 17, 1930, plaintiff was appointed such secretary, with his compensation fixed at $5,000 per year. The commissioner, in submitting his proposed budget to the common council for the fiscal year 1932–1933, included the compensation for secretary, and this was approved by the mayor but eliminated by the council on the grounds of forced economy. The mayor vetoed the elimination and, on April 28, 1932, the council overruled the veto and this action left the item eliminated.

In May, 1932, in reply to a communication of the commissioner, the corporation counsel expressed the opinion that the position of secretary could not be abolished by the elimination of compensation in the budget. The common council ignored that opinion and advised the commissioner that the com-

pensation was eliminated. Plaintiff received full compensation up to July 1, 1932.

Having no appropriation for a secretary the commissioner, on July 14, 1932, notified plaintiff of the necessity of dispensing with his services as of that date. On August 17, 1932, the commissioner wrote plaintiff that curtailment of work, by reason of the reduced budget and forced economies, made it necessary that the general superintendent assume the duties of secretary, with no increase in compensation.

August 11, 1932, plaintiff, as a veteran of the world war, filed a protest with the mayor of the city and demanded a hearing under the provisions of the veterans' preference act (1 Comp. Laws 1929, § 900 *et seq.,* as amended by Acts Nos. 66, 67, Pub. Acts 1931). The mayor accorded him a hearing and found that:

"The final budget of the department of parks and boulevards was reduced from its 1931 appropriation of $1,232,210 to a 1932–1933 appropriation of $273,964, exclusive of the 14½ per cent. five-day-a-week reduction—a figure equal to the tax appropriation for this department for 1907 (when no separate secretaryship existed)."

The mentioned amounts are questioned but there was a substantial reduction in the appropriation.

The mayor also reviewed the subject of tax delinquency, the state of city finances, obligations, curtailment of activities and the necessary employment of drastic economies in city departments. He found:

"A saving to the city of the salary formerly paid to the secretary, without the addition of any one to

the payroll, or without increasing the salary of any person to whom this work was distributed and without detriment to the reduced activities of the department.''

The mayor was of the opinion that the action was not contrary to the veterans' preference act, and confirmed the act of the commissioner in dispensing with plaintiff's services as secretary.

The action by the mayor was not final upon plaintiff's rights, if any, but it does throw much light upon the issues here involved.

Plaintiff was an appointee of the commissioner. His compensation required the approval of the common council and, when that body refused to appropriate any money for compensating a secretary during the fiscal year 1932–1933, it left the position of secretary expressly without compensation, and not to be filled by plaintiff under expectation of compensation. No other person, receiving compensation for secretarial work or duties, having supplanted plaintiff, the provisions of the veterans' preference act are not involved.

This is not an instance of removal of one to make way for another, but rather a laudable endeavor by way of doubling up services of essential employees, to the elimination of the nonessential, and thereby adjust expenditures to available means. The action taken is not colored by bad faith or ill-will toward plaintiff. His personality does not enter the presented picture.

Counsel for plaintiff contend that the charter provision—''The commissioner shall appoint a secretary,'' is mandatory, and such position must be filled by an appointee with tenure of office beyond interference by action of the common council.

We think the word "shall," considering the whole provision and the manifest purpose thereof, need not be construed to unconditionally require the appointment of a secretary by the commissioner but is permissive. The charter provides for the appointment by the commissioner, who shall prescribe the duties of the appointee, and places the secretary in subordination to the incumbent of the office of commissioner. Such a position is not an office with salary as an incident but an employment with compensation fixed by the council.

In *People, ex rel. Hoefle,* v. *Cahill,* 188 N. Y. 489, 493 (81 N. E. 453), the question was whether relator therein held an office as clerk for the coroner. We quote:

"The statute under which relator was appointed furnishes the test by which to determine this question. Such statute first directs attention to the coroner as the head of the department of government under consideration. It then provides that he 'shall appoint a clerk * * * and such and so many assistant clerks as shall be provided for * * * also appoint a stenographer.' This statute does not assign any original, independent or governmental duties to the position of clerk thus created any more than it does to that of assistant clerk or stenographer. Its plain meaning as a whole is that the coroner charged with various statutory duties and responsibilities shall have the power to appoint a clerical force which, under his direction and subject to his orders and control, shall assist him in the administration of the duties of his office by performing such routine and subordinate duties as may be assigned to them. There is entirely lacking any suggestion of those powers and responsibilities and of that independent action upon the part of one of these clerks which are inevitably incidental to a public office."

The veterans' preference act is in the nature of civil service law:

"The purpose of the civil service statutes and of other laws prohibiting the discharge of employees without cause assigned, notice, and a hearing, is to insure the continuance in public employment of those officers who prove faithful and competent, regardless of their political affiliations. These statutes are not intended to affect or control the power of the city council or the executive officers of the city to abolish offices when they are no longer necessary or for reasons of economy. They are not intended to furnish an assurance to the officer or employee that he will be retained in the service of the city after the time when his services are required. They do not prevent his discharge in good faith, without a trial and without notice, when the office or position is abolished as unnecessary or for reasons of economy." Dillon, Municipal Corporations (5th Ed.), § 479.

In *Fitzsimmons* v. *O'Neill*, 214 Ill. 494, 504 (73 N. E. 797), it was said:

"The appellant accepted the position with the knowledge that the common council recognized it as a position or office by thus annually making an appropriation for the compensation of its incumbent. When, therefore, the common council omitted to make an appropriation, and the duties of the position were turned over to some other official, who for that reason received no addition to his compensation, the position was in fact and in effect abolished. The object of the civil service act was to prevent appointment to office as a reward for political service rather than for merit, but it was not intended to restrict the right of the municipality to refuse to make an appropriation for the payment of an incumbent of an office, provided the abolishing of the office, or the failure to make such appropriation, was

made in good faith, and to reduce expenses, and not for the purpose of evading the provisions of the civil service act. * * * It certainly would be a harsh doctrine to hold that a city, or its officials, could not reduce their expenses by abolishing an unnecessary office, or refusing to make an appropriation for the salary of an office, when it was short of funds and did not need the services of the incumbent of such office."

In *People, ex rel. Corrigan,* v. *The Mayor, etc., of Brooklyn,* 149 N. Y. 215, 223 (43 N. E. 554), it was said:

"It is a well established rule of law that the power to appoint to an office or position, where the term or tenure is not defined by statute or otherwise, necessarily carries with it the power of removal."

In *Swantush* v. *City of Detroit,* 257 Mich. 389, 396, we quoted from cited cases the following language, applicable to the claim of plaintiff under the veterans' act:

" 'The board of education of the city of New York may, when work is slack, decrease its force by discharging some of a specially designated class and transfer to others the duty of performing the work which was formerly done by the persons discharged.' " *People, ex rel. Kaufman,* v. *Board of Education* (syllabus), 166 App. Div. 58 (151 N. Y. Supp. 585).

" 'Laying off or suspension for lack of work or lack of appropriation, no one else being appointed to fill the position, is in effect abolishing the position, and not a removal. * * * The difference between distributing the duties among existing employees and appointing a new man to the position is apparent.' " *Reilly* v. *Smith,* 92 Misc. Rep. 309 (156 N. Y. Supp. 686).

See, also, *Smith* v. *Flint City Commission,* 258 Mich. 698; *Owen* v. *City of Detroit,* 259 Mich. 176; *Lethbridge* v. *Mayor, etc., of New York,* 133 N. Y. 232 (30 N. E. 975).

The veterans' preference act was not designed for the purpose of perpetuating the existence of office. *State* v. *Freeholders of Hudson County,* 53 N. J. Law, 585 (22 Atl. 56).

The circuit court order granting the writ is reversed, with costs to defendants.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.