## WALKLING v. SMITH.

1. STATES—WAR VETERANS—REINSTATEMENT.

War veteran, working for public utilities commission as a telephone inspector *held,* not entitled to reinstatement under veterans' preference act where position he held was abolished (1 Comp. Laws 1929, § 900 *et seq.,* as amended).

2. SAME—VETERANS' PREFERENCE ACT—TRANSFER—CONSENT.

Purpose of veterans' preference act in requiring that veteran shall not be transferred from an office or employment without his consent does not mean that employees in public departments may not be given different work unless they consent thereto but is designed to prevent transfer as a subterfuge to get rid of an employee (1 Comp. Laws 1929, § 901, as amended by Act No. 67, Pub. Acts 1931).

3. SAME—TRANSFER WITHOUT CONSENT.
  If transfer of war veteran by public utilities commission from position of engineering assistant to telephone inspector was made, as he claims, without his consent, then his rights rest upon terms of his employment as engineering assistant which, having been designated as temporary, renders him subject to discharge upon cessation of need for his services or when commission decides to dispense with them (1 Comp. Laws 1929, § 900 *et seq.*, as amended).

4. MASTER AND SERVANT—TEMPORARY EMPLOYMENT—CONTINUANCE.
  Employment, designated temporary in authorization and appointment, and accepted, negatives permanency and reserves right of determination by the employer as to time of continuance.

5. OFFICERS—VETERANS' PREFERENCE ACT—TERMS OF EMPLOYMENT.
  Veterans' preference act does not regulate terms of employment but relates to the status as established; creating nothing nor prolonging public employment beyond public need (1 Comp. Laws 1929, § 900 *et seq.*, as amended).

  BUSHNELL, J., dissenting.

Mandamus by Lynd A. Walkling to compel William M. Smith and others, comprising the Michigan Public Utilities Commission, to reinstate him as an employee. Submitted October 15, 1935. (Calendar No. 38,483.) Writ denied June 16, 1936.

*Cummins & Cummins* (*Thomas J. Bailey, Jr.,* of counsel), for plaintiff.

*Harry S. Toy,* Attorney General, and *Edmund E. Shepherd,* and *Peter J. Monaghan, Jr.,* Assistants Attorney General, for defendants.

BUSHNELL, J. (*dissenting*). The circuit court for the county of Ingham, to whom we referred this matter for the taking of proofs, made the following finding of facts:

"1. The plaintiff is a veteran of the World War and has been honorably discharged from the army of the United States.

"2. On June 8, 1934, plaintiff was employed by the Michigan public utilities commission at an annual salary of $1,800 and was designated as an 'engineering assistant.' Such employment was designated as 'temporary.' In September following he was by resolution of the commission given the authority of a special examiner. The purpose of such action was to enable him to hold hearings and insist on the right to examine records of public utilities.

"3. Plaintiff's work following his employment and continuing until the time of his discharge, consisted principally of investigation of complaints made to the commission with reference to utility practices and charges, working on appraisals and cost accounting, and such other duties of similar character as were assigned to him by the chief consulting engineer of the commission.

"4. At the time of the filing of the petition the defendants were members of the public utilities commission. Since that time Commissioners Voorhies, Boyles and Hull have succeeded respectively Commissioners Snider, Dunn and Balch.

"5. In December, 1934, plaintiff's compensation was raised to $2,000 per annum and he was on the payroll as 'chief telephone inspector' instead of 'engineering assistant.' In January, 1935, the designation on the payroll was changed to 'telephone inspector.' These designations were not, however, accompanied by any change in duty; nor does it appear from the records that plaintiff knew of such changes in title.

"6. On January 30, 1935, the commission, at a session attended by Commissioners Smith, Dunn, Waples and Snider, adopted a resolution reciting in substance that the work of the commission did not justify the employment of a telephone inspector, and abolishing the office or position. Thereafter and on February 8, 1935, plaintiff was advised by the commission that his services would not be needed further and that he would be removed from the payroll on February 15th. On the last named

date, plaintiff filed a written protest with the commission and on the 7th day of March filed a similar notice with the governor.

"7. On the same day, March 7th, that the notice of protest was filed with the governor, plaintiff received notice from the attorney general's office that a hearing with reference to his protest would be held on March 14th, before the deputy attorney general. It does not appear that plaintiff attended this hearing, either in person or by counsel. However, the testimony of Clark C. Brown, secretary of the commission, was taken by the deputy attorney general, Honorable Emerson R. Boyles, then assistant attorney general assigned to the executive office, being present. This hearing was adjourned to March 27th at which time plaintiff appeared in person and by attorney and gave testimony. A transcript of this proceeding is attached hereto as exhibit 19.

"8. Following the hearing before the deputy attorney general above referred to, a transcript of the testimony was referred to the governor, who, on July 1, 1935, as appears by exhibit 25, made the following determination:

" ' After due notice, a hearing has been held on the petition of the above named person, protesting dismissal from employment by the public utilities commission. It appears that the position held by the petitioner was abolished at the time of his discharge; therefore, he is not entitled to the benefits of the act and is not to be reinstated.'

"Formal charges against the plaintiff were not served on him at any time and it appears that the hearings above referred to were, in fact, held on his notice of protest and demand for reinstatement. It further appears that he has not been reinstated.

"9. Plaintiff performed in a capable and satisfactory manner the duties assigned to him. He exercised the authority of a special examiner on one occasion in connection with certain services of the Consumers Power Company, and gave testimony before the circuit court of Saginaw county. His

work otherwise was of the general nature hereinbefore suggested. There is some testimony in the record with reference to alleged irregular expense accounts but such testimony is not sufficiently explicit to permit a definite finding of facts based thereon. It does not appear that plaintiff's discharge was in any way brought about by such accounts.

"10. Immediately prior to plaintiff's discharge, the commission, somewhat informally, decided on a modification of its prior policy with reference to the holding of hearings throughout the State on complaints involving telephone service. Such modification, as indicated by the testimony of Commissioner Smith, involved the eliminating of such hearings except in unusual cases when specifically authorized by the commission. It does not appear that work of the character done by plaintiff during his employment, other than the holding of telephone hearings, was materially changed.

"11. Since the discharge of the plaintiff, the work of the engineering department of the commission, in which plaintiff was employed, has been carried on by other employees, including several engineers and assistants who had been previously employed primarily on appraisal and cost division work in connection with litigation and investigation concerning the rates of the Michigan Bell Telephone Company, said employees being transferred from the so-called 'special' payroll to the regular payroll of the commission. These men were and had been employees of the commission, assigned to the proceedings referred to. No employee has been hired specifically to take the place of plaintiff.

"12. During his employment plaintiff did some work on the telephone appraisal, his time being allocated approximately one-seventh thereto and six-sevenths to the other work of the commission. It further appears that in the early part of the year 1935, eight employees were transferred from the

special 'Bell' payroll to the regular payroll of the department. Other than these eight employees ten men were carried on the payroll of the engineering division in March, 1935, following plaintiff's discharge."

Upon argument here, petitioner conceded that he is not entitled to a full hearing before the governor if the position which he held was abolished in good faith. Respondents admit that if the position was not abolished in good faith, petitioner is entitled to a full hearing before the governor and concede that such a hearing has not been given. See *Smith* v. *Flint City Commission,* 258 Mich. 698, and *Owen* v. *City of Detroit,* 259 Mich. 176.

The applicable statutes are Act No. 205, Pub. Acts 1897, as amended by Acts Nos. 66, 67, Pub. Acts 1931 (1 Comp. Laws 1929, §§ 900–903, as amended).

The record fails to show that the position originally filled by petitioner was abolished, nor is there any proof that petitioner was ever informed of his transfer to the position of chief telephone inspector and that he consented thereto. The fair inference is that the commission did not act in good faith.

Petitioner was removed from his employment in disregard of the statute; the position he regularly occupied was not abolished. He should, therefore, be reinstated and the writ should issue if necessary.

The question of his unpaid salary is controlled by *McClain* v. *Township of Royal Oak, ante,* 185, and *Lannon* v. *Hall, ante,* 190.

Wiest, J. I am not in accord with the opinion of Mr. Justice Bushnell.

Plaintiff protested his discharge and was refused reinstatement by the governor because the position he had held was abolished. If the position held by

plaintiff was abolished then he is not entitled to reinstatement. *Smith* v. *Flint City Commission*, 258 Mich. 698; *Owen* v. *City of Detroit*, 259 Mich. 176.

It is claimed in behalf of plaintiff that he was never legally transferred to the position of telephone inspector and, therefore, the abolishment of that position has no effect upon his rights.

Plaintiff claims that he had no knowledge of transfer from the position of engineering assistant to the position of telephone inspector and such transfer was void without his consent.

The veterans' act (1 Comp. Laws 1929, § 901), as amended by Act No. 67, Pub. Acts 1931, provides that: "No veteran * * * shall, without his consent, be transferred from such office or employment" except on mentioned grounds.

This does not mean that employees in public departments may not be given different work unless they consent thereto, but serves the purpose of preventing transfer as a subterfuge to get rid of an employee. But, if given the construction that there was no valid transfer without his consent, then plaintiff's rights rest upon the terms of his employment as an engineering assistant. The record contains the authorization for that employment, and it was designated "probable duration of employment temporary."

If, as plaintiff claims, there was no valid transfer to the position of telephone inspector then he remained a temporary engineering assistant, subject to discharge when the need for his services in that capacity no longer existed, or, the commission decided to dispense with his services.

Employment, designated temporary in authorization and appointment, and accepted, negatives per-

manency and reserves the right of determination by the employer as to time of continuance.

The veterans' act does not regulate terms of employment but relates to the status as established; it creates nothing nor does it prolong public employment beyond public need.

The writ is denied, with costs against plaintiff.

NORTH, C. J., and FEAD and BUTZEL, JJ., concurred with WIEST, J. EDWARD M. SHARPE, J., did not sit. POTTER, J., and the late Justice NELSON SHARPE took no part in this decision.