McMANUS v. GENESEE COUNTY ROAD COMMISSION.

1. MASTER AND SERVANT—TEMPORARY EMPLOYMENT—CONTINUANCE.
   Employment, designated temporary in authorization and appointment, and accepted, negatives permanency and reserves right of determination by the employer as to time of continuance.

2. OFFICERS—VETERANS' PREFERENCE ACT—TERMS OF EMPLOYMENT.
   Veterans' preference act does not regulate terms of employment but relates to the status as established; creating nothing nor prolonging public employment beyond public need (1 Comp. Laws 1929, § 900 et seq., as amended by Act No. 22, Pub. Acts 1944 [1st Ex. Sess.]).

3. SAME—VETERANS' PREFERENCE ACT—"SCREENING" OF EMPLOYEES.
   The veterans' preference act does not prevent a public administrative agency from "screening" their employees, where such action is essential to efficient operation (1 Comp. Laws 1929, § 900 et seq., as amended by Act No. 22, Pub. Acts 1944 [1st Ex. Sess.]).

4. COSTS—PUBLIC QUESTION—VETERANS' PREFERENCE ACT—COUN-
TIES.

No costs are allowed on appeal where order of prosecuting at-
torney reinstating plaintiffs as employees of county is reversed,
a public question under the veterans'·preference act being in-
volved (1 Comp. Laws 1929, § 900 *et seq.*, as amended by Act
No. 22, Pub. Acts 1944 [1st Ex. Sess.]).

BUSHNELL, C. J., dissenting.

Appeal from Genesee Prosecuting Attorney. Sub-
mitted October 8, 1947. (Docket No. 31, Calendar
No. 43,754.) Decided January 5, 1948.

Leo McManus and Robert·Spaleny demanded a
hearing after dismissal by Genesee County Road
Commission. Order requiring, reinstatement en-
tered. Defendant appeals. Reversed.

*Neithercut & Neithercut,* for defendant.

BUSHNELL, C. J. (*dissenting*). Defendant, Gene-,
see County Road Commission, was granted leave to
appeal from an order of the prosecuting attorney of
Genesee county, which required the reinstatement of
plaintiffs Robert Spaleny and Leo McManus to the
positions they held 'prior to their discharge on
November 15, 1946. Both Spaleny and McManus
were employed by the commission as common
laborers and·truck drivers, the former on January
21, 1946, and the latter on February 1, 1946,
each being an·honorably discharged veteran of
World War II.

Their dismissal having been protested as contrary
to the provisions of 1 Comp. Laws 1929, § 900 *et seq.*,
as amended by Act No. 22, Pub. Acts 1944 (1st Ex.
Sess.) (Comp. Laws Supp. 1945, § 900 *et seq.*, Stat.
Ann. 1946 Cum. Supp. § 4.1221 *et seq.*), a hearing
was held by the prosecuting attorney on Decem-
ber 27, 1946.

The question of the propriety of dismissal of plaintiffs turns on the two reasons given by the commission, (1) that they were hired as temporary employees, and (2) that due to the change of seasons it was necessary to lay off help for which there was no work. The applications for employment which Spaleny and McManus filed contained the following:

"If employed you will be considered as a temporary employee until such time as you have been continuously employed for one year."

Each, however, testified that when employed he discussed this statement with Robert E. Olds, maintenance superintendent of the defendant commission, at which time Olds was informed that neither of them desired temporary work. They claim they were told that if their work was satisfactory they would be given steady employment, and that men hired at that time of year were generally given steady work.

Olds, on the other hand, could not remember exactly what was said and doubted whether he had such a conversation with either of them. He maintained that no one was considered a permanent employee until they had rendered satisfactory service for one year.

The prosecuting attorney in a written opinion which he filed, after quoting extensively from the testimony, concluded as follows:

"The mere saying that an employee is a temporary employee until he has been employed one year does not make him a temporary employee, if as a matter of fact the quality of his work is the real test in determining whether or not his employment is permanent. All through the testimony there runs the thought that these men would not have been discharged had their work been satisfactory. However, the question of incompetency is not before me

for consideration. In fact, I am effectually prevented from considering the element of incompetency.''

There is included in the record an exhibit which shows that during 1946 the commission hired 51 men, 14 of them were nonveterans, and all of these 14 were employed after the date that plaintiffs began their services. It further indicates that after plaintiffs' dismissal, although no new employees were added to the pay roll, 10 of these 14 nonveterans remained on the pay roll and were doing the same work that had been performed by plaintiffs.

The prosecutor in his findings of fact referred to this situation and stated that he could ''arrive at but one conclusion from the information contained in exhibit 3, (*sic*—meaning presumably exhibit 7) namely: That nonveterans hired after McManus and Spaleny were hired were retained after McManus and Spaleny were discharged and continued to perform similar tasks to those that McManus and Spaleny had been performing.'' In reaching his conclusion that the discharge of plaintiffs by the commission was a violation of the act he stated as follows:

''I do not believe that the rule laid down in *Brand v. Common Council of the City of Detroit*, 271 Mich. 221, applies here. If a public employer can employ a veteran to perform a certain type of work and later employ a nonveteran to perform that same type of work and then discharge the veteran on the ground that due to the change of seasons there was no work for him, and still retain the nonveteran as an employee, then the purpose of the veterans' preference act is circumvented, whether intentional or not. If this simple subterfuge can be lawfully invoked by a public employer, at will, then I know of no circumstance or set of circumstances under which the veter-

ans' preference act can be of any benefit whatever to a veteran. I do not believe it is the intent of the veterans' preference act that a position or a job can be abolished in this manner, when the principal result of such a procedure, is to substitute a nonveteran, for a veteran in public employment.

"In *Walkling* v. *Smith*, 276 Mich. 193, it is held among other things that 'the veterans' preference act does not regulate terms of employment but relates to the status as established; creating nothing nor prolonging public employment beyond public need.'

"However, on November 15, 1946, there was still public need for employees to do the same type of work McManus and Spaleny had been doing and nonveterans hired after they had been hired were still retained to do this work. Therefore, there was still public need for this type of work."

There is no claim by the commission that plaintiffs were discharged because of incompetency. Even so, by providing a probationary period of one year when employees are hired, the purpose of the veterans' preference act, in absence of a claim of incompetency, could be defeated. The commission relies, among other authorities, on *Walkling* v. *Smith*, 276 Mich. 193, in which the Court said:

"Employment, designated temporary in authorization and appointment, and accepted, negatives permanency and reserves the right of determination by the employer as to time of continuance."

However, that case is distinguishable for the reason that in the instant one, according to the facts as found by the prosecutor, plaintiffs did not accept temporary employment. There is competent testimony in the record to support this finding.

*Brand* v. *Common Council of the City of Detroit*, 271 Mich. 221, also relied upon by the commission, is

a case where the position claimant had been holding, and was competent to hold, was abolished and no new person was appointed in his place. Nor are the conditions imposed by *Smith* v. *Flint City Commission,* 258 Mich. 698, present in the instant case. The positions held by plaintiffs were not abolished, as is evidenced by nonveterans still performing the same work that they had been doing. It also clearly appears that there was no lack of work of the nature being performed by them at the time they were discharged. We do not hold that the commission is. to be prevented from "screening" their men, that being essential to efficient operation.

We are constrained, however, to hold, in the absence of any showing of incompetency or lack of work, that the prosecuting attorney of Genesee county reached the proper conclusion under the evidence presented to him, that his order that plaintiffs must be reinstated to the positions they held prior to their discharge should be affirmed. This, however, without costs, no brief having been filed by appellees.

Boyles, J. I am not in accord with Mr. Justice Bushnell's conclusion.

Plaintiffs were employed by the defendant Genesee county road commission on January 21 and February 1, 1946, respectively, as common laborers and truck drivers. Their employment was on the following basis as stated in the applications on which they sought employment:

"If employed, you will be considered as a temporary employee until such time as you have been continuously employed for one year."

It was the practice of the defendant commission to hire extra men for summer work, as temporary em-

ployees, and to release some of them in the fall due to seasonal lack of work. This fact, as well as the fact that their application for employment designated the same as temporary, was well known to appellees when they were hired. Mr. Olds, who had been the maintenance superintendent for the defendant commission for about 24 years, testified, without contradiction, as follows:

"When employees are laid off by the county road commission they are always laid off from the temporary employees. All of the men that are hired by the commission are hired as temporary employees for one year, as set forth in their application. From those temporary employees whatever men are laid off are picked from this list to reduce the force."

In November, 1946, plaintiffs were dismissed from employment, the announced reasons being that they were temporarily employed, and that the change of season made it necessary to lay off help.

The instant case is controlled by *Walkling* v. *Smith,* 276 Mich. 193. In that case Walkling, an ex-service man, was employed by the Michigan public utilities commission. His employment was designated as follows: "Probable duration of employment temporary." In holding, under substantially the same veterans' preference act that applies to the instant case,* that his discharge was legal, the Court (Mr. Justice Bushnell dissenting) said:

"Employment, designated temporary in authorization and appointment, and accepted, negatives permanency and reserves the right of determination by the employer as to time of continuance.

"The veterans' act does not regulate terms of employment but relates to the status as established; it

---

* Subsequent amendments, including Act No. 22, Pub. Acts 1944 (1st Ex. Sess.) (Comp. Laws Supp. 1945, §§ 900, 901, Stat. Ann. 1946 Cum. Supp. §§ 4.1221, 4.1222), have no bearing hereon.

creates nothing nor does it prolong public employment beyond public need."

I agree with Mr. Justice BUSHNELL where he writes that:

"We do not hold that the commission is to be prevented from 'screening' their men, that being essential to efficient operation."

But in that connection the record before us discloses the following uncontradicted testimony by Mr. Olds:

"*Q.* How do you determine who shall be laid off?

"*A.* That is determined by three of us. We go in and discuss the matter, according to the work that is produced or, not produced; their ability to get along in the organization is the factor that we decide on. \* \* \*

"*Q.* But these men (the plaintiffs) were not dismissed, were they, because of their unsatisfactory work?

"*A.* They were not of the best caliber of men that we had.

"*Q.* But is it not true in the statement of the commission that they were not dismissed for the competency of their work?

"*A.* Not in its entirety. It is partially true and partially it is not, but we had to reduce the force, which we always do in the fall, and we do not keep our poorer employees, in our judgment."

Earl Tuller, maintenance foreman in charge of maintaining and dispatching trucks for the commission, who was consulted in hiring and firing of men, testified:

"*Q.* Did you have any discussion with either Spaleny or McManus at the time they were dismissed?

"*A.* Nothing, outside of that they came and asked me the reason why, and their work wasn't so good, or something like that—make some casual remark.

"*Q.* What reason did you give them for their dismissal?

"*A.* Well, they had been told it was a reduction of force. They knew that. They came to me and wanted to know if the work wasn't satisfactory and I made it plain to both of them that their work had not been satisfactory."

Plaintiffs' discharge was legal and the order of the prosecuting attorney to the contrary is set aside. No costs, a public question being involved.

SHARPE, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred with BOYLES, J.