GUASTELLO v. CITIZENS MUTUAL INSURANCE COMPANY.

1. Insurance—Fire—Commencement of Action Against Insurer—
   Process.
   Statutory fire insurance policy requirement that action against
   defendant insurer must be commenced within 12 months of
   the loss *held*, not satisfied by merely filing a complaint, but
   service of process must also be effected within that time (CLS
   1961, §§ 500.2806, 500.2832).

2. Same—Fire—Commencement of Action Against Insurer—
   Limitation of Actions.
   Statutory fire insurance policy requirement that action against
   defendant insurer must be commenced within 12 months of
   the loss *held*, not to be expanded by court rule or statute
   which provide that an action is commenced by filing a com-
   plaint (CLS 1961, §§ 500.2806, 500.2832, 600.1901; GCR 1963,
   101).

3. Limitation of Actions—Process—Evidence.
   A principal purpose of establishing time limitations, contractual
   or statutory, within which action must be brought, is that
   those having claims must be obliged to assert them while the
   defendant's evidence can still be retrieved.

4. Process—Courts—Rule-Making Power.
   Promptness and diligence in the service of process are required
   and when there is no expressly applicable court rule an ap-
   propriate requirement may be fashioned by judicial declara-
   tion.

---

References for Points in Headnotes
[1, 2] 29A Am Jur, Insurance § 1799.
[3] 34 Am Jur, Limitation of Actions § 9 *et seq.*
[4, 5] 42 Am Jur, Process § 9.
[6] 42 Am Jur, Process § 131 *et seq.*
[7] 56 Am Jur, Venue § 42 *et seq.*
[8] 20 Am Jur 2d, Courts § 82.
[9] 20 Am Jur 2d, Courts § 85.
[10] 20 Am Jur 2d, Costs § 9.
[11, 12] 20 Am Jur 2d, Courts § 84.

5. SAME—LIMITATION OF ACTIONS.

If service of process is in good faith placed in the hands of an officer for immediate service, the statute of limitations is tolled for not longer than 90 days (CLS 1961, § 600.5856).

6. SAME—LIMITATION OF ACTIONS—KNOWLEDGE OF ACTION—DEFECTIVE SERVICE.

Insurer's actual knowledge that action under policy had been commenced against it within time limited by policy *held,* not to prevent running of policy period of limitations where attempt to serve process was defective, and plaintiff promptly became aware of defect but made no attempt to effect proper service until after limitation had run.

7. VENUE—COURT RULES—POWER TO EXTEND TIME LIMITATIONS—COSTS.

Plaintiff's failure to pay defendant's costs within period for timely action, under court rule providing that case shall be dismissed in that event, where trial court granted defendant's motion for change of venue and ordered plaintiff to pay defendant's costs and where defendant refused plaintiff's tender after period for timely action, *held,* not to oblige trial court to dismiss plaintiff's action (GCR 1963, 404).

8. COURTS—COURT RULES—ADMINISTRATION OF JUSTICE—DISCRETION OF COURT.

Court rules are adopted to expedite the administration of justice, and when in a particular case they fail of their purpose, they may for cause be modified or suspended in the court's discretion.

9. SAME—COURT RULES.

Court rules may be either mandatory or directory.

10. VENUE—CHANGE—COSTS—DISCRETION OF COURT.

The imposition of costs upon change of venue rests in the discretion of the court (GCR 1963, 404).

11. COURTS—COURT RULES—POWER TO EXTEND TIME LIMITATIONS.

Time limitations prescribed by court rule should not be so imperative as to preclude the power of extension, but should depend on the function of the time limitation and the effect on the policy sought to be achieved by the time limitation (GCR 1963, 404).

12. Same—Court Rules—Power to Extend Time Limitations.
    Recognition in the circuit judges of the power to extend the
    time for paying a discretionary allowance of costs awarded
    pursuant to court rule will not erode the policy of that rule
    (GCR 1963, 404).

Appeal from Wayne; Kaufman (Nathan J.), J.
Submitted Division 1 February 2, 1967, at Detroit.
(Docket No. 1,547.) Decided April 24, 1968.

Complaint by Russell Guastello against Citizens
Mutual Insurance Company, a Michigan corpora-
tion; Zurich Insurance Company, an Illinois corpora-
ation; and Alpine Drive-In Restaurant, Inc., a
Michigan corporation, for breach of contracts. Ac-
celerated judgments for defendant Citizens Mutual
Insurance Company and for plaintiff as to defendant
Zurich Insurance Company. Plaintiff and defendant
Zurich Insurance Company appeal. Affirmed.

*Wilson M. Jackson,* for plaintiff.

*Julius Denenberg,* for defendant Zurich Insurance
Company.

Levin, P. J., On October 14, 1963, a restaurant
operated by plaintiff Russell Guastello was partially
destroyed by fire. The restaurant was located in
premises leased from defendant Alpine Drive-In
Restaurant, Inc. Guastello carried Michigan stan-
dard policies of fire insurance with defendants
Citizens Casualty Company and Zurich Insurance
Company. The policies provide, as required by the
relevant statute, that action thereon must be "com-
menced within 12 months next after inception of
the loss."[1]

---

[1] CLS 1961, §§ 500.2806, 500.2832 (Stat Ann 1957 Rev §§ 24.12806,
24.12832)

On February 24, 1964, well within the 12-month period, Guastello commenced action against both Citizens and Zurich in the Macomb county circuit court. Copies of the complaint and summons were mailed to the commissioner of insurance on March 18, 1964, with the request that he serve both Citizens and Zurich. The commissioner immediately notified Guastello that he was not authorized to serve Citizens because Citizens was a Michigan, rather than a foreign, insurer.[2]

Guastello made no further effort to serve Citizens until after the expiration of the 1-year period prescribed by both statute and the policy. On April 29, 1965, a copy of the summons and complaint was delivered to an employee of Citizens.[3]

Zurich was duly and timely served by the commissioner of insurance. On June 15, 1964 an order was entered granting Zurich's motion to change the venue of the action from Macomb to Wayne county; the order required Guastello to pay Zurich $25 "which represents its costs and reasonable attorneys' fees in attending in this county."

On May 6, 1965, both Citizens and Zurich moved in the Wayne circuit court for accelerated judgment. Citizens contended that Guastello had failed to effect service of the complaint and summons upon Citizens and that the action against Citizens had not been commenced within 12 months of the loss. Zurich contended Guastello had not, within the 60-day period provided in GCR 1963, 404,[4] paid the $25

---

[2] CLS 1961, § 500.456 (Stat Ann 1957 Rev § 24.1456); CLS 1961, § 600.1920 (Stat Ann 1962 Rev § 27A.1920); GCR 1963, 105.4, 105.7.

[3] Since we conclude that service was not timely, we need not consider whether the employee served on that date was one upon whom a service effective as to Citizens could be made.

[4] "The venue of any civil action improperly laid shall be changed by order of the court on timely motion by any defendant, or may be changed by the court on its own motion. The court shall order the change at plaintiff's cost, which may include reasonable compen-

ordered in the grant of Zurich's motion to change venue from Macomb to Wayne county, and, as provided in that rule, the action should be dismissed.

In an effort to comply with the order of June 15, 1964, Guastello's counsel then mailed to Zurich's counsel a check for $25; the check was refused and returned.

The trial judge ruled the action had not been timely commenced against Citizens and entered an accelerated judgment dismissing the complaint as to Citizens. He denied Zurich an accelerated judgment, holding the failure timely to pay the $25 did not oblige dismissal of the complaint as to Zurich. Guastello appeals the accelerated judgment in favor of Citizens, and Zurich appeals the refusal to grant its motion for accelerated judgment. In our opinion, the trial judge's rulings on the motions as to both Citizens and Zurich were correct.

## 1.

Guastello asserts the requirement that action be "commenced" within 12 months was complied with when the complaint was filed with the court, regardless of whether service of the complaint and summons was effected within that time. He relies on GCR 1963, 101 and RJA, § 1901 (CLS 1961, § 600-.1901 [Stat Ann 1962 Rev § 27A.1901]), both of which provide "A civil action is *commenced by filing* a complaint with the court." (Emphasis supplied.)

However, the official committee comment to GCR 1963, 101 cautions:

---

sation for defendant's expense, including reasonable attorney's fees, in attending in the wrong county. No further proceedings shall be had in the case after transfer until the costs and expenses allowed under this rule have been paid, and if they are not paid within 60 days from the date of the order of change of venue the case *shall* be dismissed by the court to which it was transferred." GCR 1963, 404. (Emphasis supplied.)

"This section will not affect *statutes* of limitation. The exact time for tolling the statutes of limitation will be covered by statutory amendment." (Emphasis supplied.) Reprinted as annotation in Stat Ann Rules, p 8.

The statutory amendment concerning tolling (CLS 1961, § 600.5856 [Stat Ann 1962 Rev § 27A .5856]), referred to in the official comment, provides that the running of the statutes of limitations is tolled when the complaint is filed and a copy of the summons and complaint are either (1) served or (2) in good faith placed in the hands of an officer for immediate service (but not for longer than 90 days after delivery to the officer) or (3) jurisdiction over the defendant is otherwise acquired. Whatever service was effected upon Citizens on April 29, 1965, was at a time well beyond the sum of the 12-month and 90-day periods. Thus, Guastello could not advance his cause by successfully contending that the insurance policy's 12-month time limitation was expanded by RJA, § 5856.

There is authority that RJA, § 5856 does not apply to a special statute of limitations. *Troy W. Maschmeyer Company* v. *Haas* (1965), 376 Mich 289, 306. There is also authority that the time limitation for commencement of action set forth in the statutorily prescribed Michigan standard policy of fire insurance is a special statute of limitations. *Dahrooge* v. *Rochester German Insurance Co.* (1913), 177 Mich 442, 455.

Guastello argues that (1) if the right under the Michigan standard policy is statutorily created, as Citizens contends, then RJA, § 5856 is inapplicable because of the holdings in *Dahrooge*[5] and *Masch-*

---

[5] *Dahrooge* held (p 456) that a general savings provision that *preceded* by nearly 50 years enactment of the "special statute of limitations relative to fire insurance policies" could not be relied

*meyer,*[6] and that (2) if the right under the policy arises by contract, as Guastello contends, then RJA, § 5856 is inapplicable because RJA, § 5856 concerns only *"statutes* of limitations".

However, even if the special time limitation before us is viewed as one in respect to a contractually created rather than a statutorily created right, and RJA, § 5856 is regarded as inapplicable, it would not follow necessarily that we must look solely to GCR 1963, 101 and RJA, § 1901 to determine when action on a fire policy is commenced. The interpretation urged by Guastello would toll the policy's time limitation for commencement of action upon the mere filing of a complaint, even though no subsequent effort is made to serve the defendant with notice of the pendency of action. Such a construction is inconsistent with one of the principal purposes sought to be achieved by establishing time limitations, contractual or statutory, within which action must be brought—that those having claims

on to extend that time limitation. *Dahrooge's* holding was adopted in subsequent cases where the *right* was statutorily created, and the well-settled rule evolved that a special statute of limitation set forth in a statute creating a right cannot be extended by a general savings provision. *Bigelow* v. *Otis* (1934), 267 Mich 409, 412 (rescission under the blue sky law); *Holland* v. *Eaton* (1964), 373 Mich 34, 37 (dramshop act); *Troy W. Maschmeyer Company* v. *Haas*, *supra*, p 306 (mechanics' liens). However, the statute prescribing the Michigan standard policy did not authorize a contractual relationship unknown to the common law, but rather sought to regulate the nature of that relationship. *Dahrooge*, therefore, need not be read as precluding application of a provision, such as RJA, § 5856, enacted *after* the adoption of the Michigan standard policy.

6 The Court was closely divided in *Maschmeyer*. Four justices stated RJA, § 5856 was inapplicable "to actions enforcing a right created by a statute which itself includes a time limitation on bringing such an action." Three justices stated RJA, § 5856 should nevertheless apply. One justice did not express his views thereon. It has been noted that the typical general savings provision extends the time irrespective of whether action has been started and for what can be long periods of time, while the tolling provision of RJA, § 5856 assumes the complaint has been timely filed and extends the time for not more than 90 days.

must assert them, if at all, while the defendant's evidence can still be retrieved.[7]

Guastello relies heavily on *Christe* v. *Springfield Fire & Marine Insurance Co.* (1919), 207 Mich 12, where suit was filed on a Michigan standard policy of fire insurance 5 days before the expiration of the 12-month period but not served until 4 days thereafter. The *Christe* Court ruled that earlier cases holding suit was not commenced until service was effected were no longer controlling, because the statute had been amended in the interim to eliminate the service requirement.

The *Christe* Court did not reach the question whether suit would be deemed commenced upon the mere filing of plaintiff's pleading, irrespective of whether there was a continuing good faith effort to effect service. While we acknowledge that the *Christe* Court did say suit "might be *commenced* simply by filing the declaration", that language was entirely appropriate in *Christe* where the summons was served within 9 days after the suit was started.

In *Home Savings Bank* v. *Young* (1940), 295 Mich 725, the Court rejected the plaintiff's argument that a statute of limitation was tolled indefinitely upon the mere commencement of suit and ruled that the failure to issue a timely alias summons[8] constituted a break in the continuity of suit, entitling the defendants to assert the statute of limitations. In *Home Savings Bank*, the Court limited the holding

---

[7] That courts avoid an interpretation that could prolong indefinitely the time for bringing suit, see *Hammel* v. *Bettison* (1961), 362 Mich 396.

[8] "Under our practice prior to adoption of our General Court Rules of 1963, service of process had to be made within 90 days either of issuance of the original process or of alias processes issued within 10 days after the filing of a return showing failure of service of the preceding process. See Court Rules No 13 and No 14 (1945). Failure to make service within such successive periods of time and failure to have issued timely alias summons resulted in termination of proceedings." *Troy W. Maschmeyer Company* v. *Haas* (1965), 376 Mich 289, 304 (from the opinion of 4 justices).

in *Christe* to its factual situation, *i.e.*, a declaration filed within the time limitation "followed by the accomplishment of prompt service", albeit after the expiration of the time limited (pp 734, 735):

"We do not understand that the question of a break in the continuity of prosecuting plaintiff's case was in any way involved in the cited decision [*Christe*]."

*Christe* was again considered by the Supreme Court in *Yeager v. Mellus* (1950), 328 Mich 243. In *Yeager* the plaintiff, as in *Christe*, had filed a declaration with rule to plead. The defendant in *Yeager* was served 100 days after the declaration was filed. The defense was discontinuity of the suit and the bar of the statute of limitations. The plaintiff there, as does Guastello here, claimed he could serve his pleading (p 247) "at any time", because there was no provision in either statute or court rule prescribing a time within which service must be made. The Court replied that there was (p 247) "nothing in the statute or court rules expressly giving the plaintiff such latitude of conduct." The Court continued (p 248):

"When the plaintiff confers on the court jurisdiction of the subject matter of a suit, *it can only be on condition that he proceed with due diligence to give notice to the defendant.* This Court has heretofore required reasonable promptitude in serving original summons and alias summonses. * * *

"It is not to be inferred that this Court in making the court rules either intentionally or inadvertently omitted all requirements of promptitude as to the plaintiff who files his declaration with notice to plead and of compliance with the time limit of 3 months, in Court Rule No 13 [applicable to "original writs"].

"Merely filing a declaration with notice to plead is of course no notice at all. Waiting more than 3

months with nothing of record to excuse the delay is not due diligence." (Emphasis supplied.)

The Court held that while the suit had been started, there was discontinuity of suit upon the expiration of the 3-month service of process tolling period established as to original writs in Court Rule No 13 (1945).

The principle which emerges from *Home Savings Bank* and *Yeager* is that promptness and diligence in the service of process are required,[9] and that when there is no expressly applicable court rule an appropriate requirement may be fashioned by judicial declaration.

Under the former practice, there was a break in the continuity of suit if process and alias processes were not timely issued and transmitted to an officer with the bona fide intention of having them served. Under the present practice, at least as to those cases to which RJA § 5856 applies, if the process is in good faith placed in the hands of an officer for immediate service, the statute is tolled for not longer than 90 days.

If RJA § 5856 does not apply, it appears the most a plaintiff may claim is that service is timely, if (in words of *Home Savings Bank* commenting on *Christe*) the filing is "followed by the accomplishment of prompt service",[10] or that the 90-day period of RJA § 5856 should, nevertheless, be applied to such a case, just as the Court in *Yeager* applied to a declaration with rule to plead the 3-month provi-

---

[9] Compare *Dedenbach* v. *City of Detroit* (1906), 146 Mich 710, and *Howell* v. *Shepard* (1882), 48 Mich 472.

[10] "We think the extent of decision in the *Christe Case* was a holding that a suit at law started prior to the time limitation by which it would be barred and followed by the accomplishment of prompt service, notwithstanding it was subsequent to the time limited, saved plaintiff's rights from the limitation." *Home Savings Bank* v. *Young* (1940), 295 Mich 725, 734.

sion expressly applicable only to original writs.[11] Here it is unnecessary to express our views on the merits of any such claim.[12]

Over a year elapsed after Guastello commenced action before he made any effort to serve Citizens, other than through the commissioner of insurance, who promptly notified Guastello that he was not authorized to act. After hearing from the commissioner of insurance, Guastello delayed taking action to effect service until some 6 months after expiration of the time limitation for commencing action, provided by the policy and statute. Guastello's action against Citizens is barred by his failure to have acted with greater diligence.

2.

We have considered Guastello's further contention that Citizens' conceded knowledge, within the 12-month period for commencing action, of the pendency of these proceedings dispensed with the necessity of service upon Citizens of copies of the complaint and summons. Like arguments have been considered by our Supreme Court, and other appellate courts, and generally rejected.[13]

In *People* v. *Detroit Mortgage Corporation* (1924), 228 Mich 91, the Supreme Court ruled that the appellant was not properly made a party defendant when the trial court entered an order adding the appellant and directing that a copy of the complaint

---

11 Compare *Taylor* v. *Mathews* (1923), 224 Mich 133.

12 The holding in *Yeager* v. *Mellus, supra,* could be explained by the reliance therein on *City of Menominee* v. *Circuit Judge of Menominee County* (1890), 81 Mich 577, and thereby limited.

13 *Howard* v. *Preston* (1966), 30 Wis 2d 663, 668, 669 (142 NW 2d 178, 181, 182); *Bennett* v. *Supreme Tent of Knights of Maccabees of the World* (1905), 40 Wash 431, 436 (82 P 744, 746); *Waller* v. *Weston* (1899), 125 Cal 201 (57 P 892); *In re Central Irrigation District* (1897), 117 Cal 382, 391 (49 P 354, 357); 42 Am Jur, Process, § 4, p 8. See, also, *Kennedy* v. *State* (1936), 177 Okla 79, 83 (58 P2d 139, 144).

be served upon it, even though such service was immediately effected in the courtroom. The defect successfully urged on appeal was that a copy of the summons was not also delivered to the appellant. Three justices observed (p 93), "We know of no method of subjecting a party to the jurisdiction of a court, except by the issuance and service of process." Similarly, see *Wilcke* v. *Duross* (1906), 144 Mich 243. In neither of the foregoing cases, however, was the plaintiff barred by the statute of limitations from proceeding anew.

Many states have a statutory saving provision permitting the commencement of a new action where the original action fails because of defects specified in the statute. Defects in the service of process are sometimes covered by such statutes. See 54 CJS, Limitations of Actions, § 287 *et seq.* Michigan statutory law contained such a savings provision[14] for over 100 years. That savings provision was, however, repealed by the revised judicature act of 1961, PA 1961, No 236, § 9901 (CLS 1961, § 600-.9901, Stat Ann 1962 Rev § 27A.9901).

There is some authority that even though a defective service of which the defendant is aware will not support a judgment, in appropriate circumstances defendant's knowledge of the attempted service may toll the statute of limitations. *Lunkin* v. *Triangle Farms, Inc.* (1945), 208 La 538 (23 So 2d 209) ; *Stauffer* v. *Isaly Dairy Co. of Pittsburg* (1965), 4 Ohio App 2d 15 (211 NE2d 72). *In Aetna Casualty and Surety Company* v. *Patterson* (ED Mich, 1958), 163

---

[14] CL 1948, § 609.19 (Stat Ann § 27.611). The savings provision so repealed was the savings provision held in *Dahrooge* to be inapplicable to a suit brought under the Michigan standard policy. As to the applicability of the former savings provision where plaintiff's negligence may be involved, see *Home Savings Bank* v. *Fuller* (1941), 299 Mich 9, 23.

F Supp 783,[15] the court purportedly applied Michigan law in finding no discontinuity of suit where, upon dismissal of an action because of defective service, a new summons issued and service was promptly made, even though the new service was after the statute of limitations had expired.

*Dedenbach* v. *City of Detroit* (1906), 146 Mich 710, might be cited for the view that Michigan has rejected such possible exception to the general rule that defendant's knowledge of the pendency of suit is not a substitute for good service of process; but in *Dedenbach* the issue whether defendant's knowledge of a defective attempted service could toll the statute was not squarely decided. We need not attempt to resolve the question. Granting the possible wisdom of an exception in a case where the defendant was defectively served before expiration of the time limitation, and in that manner gains knowledge within the limited time that an action is pending against him, such an exception should not be available to one who, as Guastello, learns that his attempted service is defective and delays for over a year before making a further effort to effect service.

### 3.

We now consider Zurich's assertion that Guastello's failure to pay the $25 costs ordered upon the change of venue from Macomb to Wayne county within the 60-day period provided in GCR 1963, 404 required dismissal of the action against Zurich, because the rule provides the case "shall be dismissed" in that event. For full text of GCR 1963, 404, see footnote 4.

---

[15] The Court referred to Michigan's former savings provision (CL 1948, § 609.19 [Stat Ann § 27.611]), but did not rest its holding thereon.

The order denying Zurich's motion for accelerated judgment directed Zurich to accept the $25. Thus, after the period for timely action had expired, the trial judge in effect extended the time for payment.

For the reasons which follow, we conclude that GCR 1963, 404 did not oblige the trial judge to dismiss Guastello's action against Zurich, that he could, in his discretion, extend the time for payment after the expiration of the period for timely action, and that he did not err in his exercise of that discretion.

The rules of practice and procedure were at one time established by the courts without legislative embellishment. Legislative initiative came when the judiciary failed to adapt ancient procedures to new needs and the re-evaluations of later generations, but the legislative formulations also proved entirely too inflexible in operation. Those who desired to achieve further reform urged the courts to reassert their inherent power to promulgate rules of practice and procedure and argued that the courts, having promulgated the rules, would enjoy a more flexible dispensing power than they exercise in construing legislative directives.[16] Morgan, Judicial Regulation of Court Procedure, 2 Minn L Rev 81, 83 (1918).

In many states, the judiciary responded. We have witnessed a significant expansion in both the number and detail of our court rules. It is important that we not forget the rigidity which came to pervade the old rules. The lesson of history is that if the courts lose sight of the function of procedural rules, our new rules will become as unresponsive to their purpose as the old judicial and later statutory rules

---

[16] In *Perin* v. *Peuler* (1964), 373 Mich 531, 541, the Supreme Court held it was free to discard a statute concerning practice and procedure. "The function of enacting and amending judicial rules of practice and procedure has been committed exclusively to this Court (Const 1908, art 7, § 5; Const 1963, art 6, § 5); a function with which the legislature may not meddle or interfere save as the Court may acquiesce and adopt for retention at judicial will."

of practice which they replace.   See Flexible Interpretation of Rules of Court to Suit Circumstances of a Particular Case, 24 Tex L Rev 77 (1945).

The official committee comment to GCR 1963, 13, which concerns construction of court rules, declares:

"Rules of practice and procedure are exactly that. They should create no rights and should be thought of as indicating the way in which justice should be administered.   They should give direction to the process of administering justice but their application should not become a fetish to the extent that justice in an individual case is not done.   There is a need for guides and standards.   They must be followed but they must always be thought of as guides and standards to the means of achieving justice, not the end of justice itself."   Reprinted as annotation to Stat Ann, Rules, Rule No 13, p 4.

In *Norton* v. *Standard Coosa-Thatcher Company* (1958), 203 Tenn 649, 658 (315 SW2d 245, 249) the court observed:

"There are many authorities[17] which declare that the rules of court should be strictly adhered to, both by the parties and by the court.   We think that the proper rule to apply, in applying our rules, is stated in 21 CJS, Courts, § 178, p 284, thus: 'rules of court are but a means to accomplish the ends of justice, and that the court has the power to modify, suspend, or rescind its own rules whenever justice requires it, at least where no party is prejudiced thereby;'

"We do not of course wish to be in the position of applying a rule of foot in enforcing these rules but the court should administer them in a discretionary manner.   When it appears to the court that no harm can be done to the one who makes the mo-

---

[17] For a collection of diverse holdings on this question, see Annotation, Violation of court rule by trial court as ground for reversal or new trial, 23 ALR 52 (1923) and 21 CJS, Courts, § 178, p 284.

tion to enforce the rule, and that an injustice would
be done by enforcing the rule, then the court should
use grace and discretion in administering the rule.
If circumstances demand, an imposition of terms
may be applied."

Similarly, see *Adams* v. *Sharp* (1964), 61 Cal 2d
775, 777, 778 (40 Cal Rptr 255, 394 P2d 943, 944);
*Myers* v. *Duibley* (1952), 94 Ohio App 228, 231,
232 (114 NE2d 832, 835); *Handelman* v. *Handelman*
(1954), 17 NJ 1, 9, 10 (109 A2d 797, 802); *People*
v. *Davis* (1934), 357 Ill 396, 399, 400 (192 NE 210,
212); *Ex parte Poultney* v. *City of Lafayette*
(1838), 37 US (12 Pet) 472, 475 (9 L Ed 1161, 1162);
*Smirl* v. *Globe Laboratories, Incorporated* (1945),
144 Tex 41, 45 (188 SW2d 676, 678).

In *Fisher* v. *Hill* (1951), 368 Pa 53, 56 (81 A2d
860, 863), the court held a rule that every pleading
subsequent to complaint "shall" be filed within 20
days after service of the preceding pleading was not
mandatory, but would permit exceptions where jus-
tice required.  The court stressed that procedural
rules are not ends in themselves but the " 'means
whereby justice, as expressed in legal principles, is
administered.' "

In *Thon* v. *Erickson* (1950), 232 Minn 323, 324
(45 NW2d 560, 561), the court held that if the ends
of justice were promoted by a change of venue, it
was not an abuse of discretion to suspend a court
rule to allow that change:

"Court rules are adopted to expedite the adminis-
tration of justice, and when in a particular case they
fail of their purpose they may for cause be modified
or suspended in the court's discretion."

Court rules,[18] just as statutes, may be either mandatory or directory.[19] *People* v. *Koharski* (1913), 177 Mich 194, 196, held that a court rule providing "it *shall* be the duty of the plaintiff's counsel" to make an opening statement was directory, not mandatory. (Emphasis supplied.)

Delays in filing papers have been held to be mere irregularities. *State Mutual Rodded Fire Ins. Co.* v. *Engel* (1934), 269 Mich 348, 354; *Goodspeed* v. *Smith* (1910), 161 Mich 688, 690. *Cf. Sovey* v. *Ford Motor Co.* (1937), 279 Mich 313, 315, 316, where the Court observed that "statutory limitations of time in judicial proceedings, *as distinguished from court rules,* are impertative." (Emphasis supplied.)

GCR 1963, 404 states that venue improperly laid "*shall* be changed" by the court, the court "*shall* order the change at plaintiff's cost," and if such costs are not timely paid the case "*shall* be dismissed." (Emphasis supplied.) The committee comment states:

"Upon determination that venue is improperly laid, the court *must* order the change. * * * The imposition of costs rests in the *discretion* of the court." (Emphasis supplied.) Reprinted as annotation to Stat Ann, Rules, Rule 404, p 156.

It thus appears from the official comment that "shall"[20] is used in different senses in GCR 1963, 404 itself.

It is apparent that just as the word "commenced", as used in the Michigan standard policy and GCR 1963, 101, and RJA, § 1901, does not have one im-

---

[18] Compare *In re G. W. Giannini, Inc.* (CA2, 1937), 90 F2d 445.

[19] For a critique of that serviceable term, see *Ellis* v. *Tillman* (1921), 125 Miss 678, 687, 688 (88 So 281, 283).

[20] For additional cases where "shall" has been construed to mean "may" and vice versa, see *Office of Price Administration* v. *Klatter* (1946), 315 Mich 607, 610; *Smith* v. *School District* (1928), 241 Mich 366, 368, 369; *Brand* v. *Common Council* (1935), 271 Mich 221, 226.

mutable meaning, so too "shall", as used in GCR 1963, 404, has no absolute, imperative meaning.

In *St. John* v. *Nichols* (1951), 331 Mich 148, 159, the Supreme Court observed:

"While this Court should and does give due regard to its own rules, the promulgation thereof cannot shackle the powers of this Court to do that which ought to be done if otherwise within the powers of the Court."

We fully appreciate that it is the Supreme Court, and not the circuit court[21] or this Court which enjoys the constitutional power to promulgate and modify rules of practice and procedure (Const 1963, art 6, § 5). However, we are persuaded that the Supreme Court has not reserved to itself alone the dispensing power referred to in *St. John* v. *Nichols, supra.* Any other analysis would mean that extensions of the kind granted here by the trial judge could be obtained only upon application to the Supreme Court.

We have carefully examined GCR 1963, 108.7(2) and conclude that its express grant of dispensing power was not intended to preclude altogether the exercise of such power in areas not expressly dealt with in that rule. Rule 108.7(2) expressly authorizes a circuit judge to extend the time for filing any pleading or motion "or the doing of any act" if the request is made *before* the expiration of the period originally prescribed. The rule also provides that *after* such period the circuit judge may "permit a party to *plead*" where the failure to do so was the result of excusable neglect. (Emphasis supplied.)

It appears that students of the subject do not regard GCR 1963, 108.7(2) as eliminating the court's discretion to entertain, for example, motions out of

---

[21] Compare *Detroit, G. R. & W. R. Co.* v. *Eaton Circuit Judge* (1901), 128 Mich 495.

time.[22] 1 Honigman & Hawkins, Michigan Court
Rules Annotated (2d ed), p 166. Rule 108.7 was in-
tended primarily as a substitute for Court Rule No
8(2) (1945), which former rule provided one addi-
tional day for service by mail per 100 miles. The
elaboration in Rule 108.7 on its new concept was not,
in our opinion, intended to eliminate power formerly
enjoyed by circuit judges.

In one of our early reports, *Drake* v. *Andrews*
(1851), 2 Mich 204, 206, the following dictum ap-
pears:

"The Court says in *Bates* v. *Loomis,* 5 Wend (NY)
136: 'It is the ordinary course of the Court to en-
large the time to plead, or other time prescribed
for any other purpose by the *rules* or *practice* of
the Court, upon cause shown.   *   *   *   The rules
and practice of the Court being established by the
Court, may be made to yield to circumstances to
promote the ends of justice.' "

In the last analysis, whether a time limitation
prescribed by court rule should be regarded as so
imperative that it may not be extended in the dis-
cretion of the court, depends on the appraisal of the
function of the time limitation and the effect on the
policy sought to be achieved in establishing the time
limitation of recognition of a power to grant exten-
sions.

In our opinion recognition in the circuit judges
of the power to extend the time for paying a dis-
cretionary allowance of costs awarded pursuant to

---

[22] See, also, *General Necessities Corporation* v. *Wayne Circuit Judge*
(1921), 214 Mich 138, 140, holding that a court rule limitation on
the time for filing a motion for a new trial, "in no way interferes
with the common-law discretion of the court to hear such motion at
a later day, but imposes on the plaintiff the necessity of procuring
leave of the court to do so,", which leave may, in the discretion of
the court, be granted out of time. Similarly, see *Uhrstadt* v. *Sauer
Cooperage Co.* (1944), 309 Mich 201, 204.

GCR 1963, 404 will not erode the policy of that rule and is more likely to produce sound results.

Affirmed, with costs to Citizens on Guastello's appeal and with costs to Guastello on Zurich's appeal.

BURNS and McGREGOR, JJ., concurred.