## VAN BENSCHOTEN v. FALES.

1. ATTACHMENT—ALIAS WRIT—RULES OF COURT—EFFECT.
   Under article 6, § 5, of the Constitution, providing that the Supreme Court shall, by general rules, establish, modify, and simplify the practice in the circuit courts, the Supreme Court was authorized to make a rule (Circuit Court Rule No. 1, subd. *b*) permitting the issuance of *alias* and *pluries* writs, including writs of attachment, which rule, in the absence of anything in the statute conflicting therewith, is to be given the force and effect of a statutory provision.

2. SAME—NEW AFFIDAVIT—WHEN UNNECESSARY.
   No new affidavit is required to support an *alias* or *pluries* writ of attachment, where the property has been seized

under the original writ, and the further writ is desired merely
to subserve the purposes of a summons.

3. SAME — COPARTNERS — JOINT WRONG—SUFFICIENT ALLEGATION.
    · In attachment proceedings against two partners, an affidavit
    reciting that the deponent "has good reason to believe,
    and does believe, that the said C. and H. have assigned, dis-
    posed of, and concealed their property with intent to defraud
    their creditors," sufficiently alleges that each defendant is
    guilty of the wrong charged.                              ·

4. SAME—MISNOMER—IDENTIFICATION.
    A writ of attachment was issued against two partners doing
    business under a firm name in a small town where there was
    no other firm of the same name. *Held*, that a misnomer,
    consisting only of an error in the Christian name of one of
    the partners, did not invalidate the writ, since the parties
    were sufficiently identified.

Error to Ionia; Davis, J.   Submitted February 12,
1901.   Decided March 26, 1901.   ·

Replevin by Harvey .L. Van Benschoten and George
W. Harris against Elmer E. Fales.   From a judgment
for plaintiffs on verdict directed by the court, defendant
brings error.   Reversed.

*Charles L. Rarden* ( *George E. & M. A. Nichols*, of
counsel), for appellant.                            ‸

*Morse & Locke*, for appellees.

LONG, J.   The defendant is a deputy sheriff for Ionia
county, and on the 29th day of July, 1899, at the city of
Belding, levied an attachment upon the goods in contro-
versy in favor of Henry Stern and Gotthilf Bloch,
copartners, doing business under the firm name of Stern
·& Bloch, and against John V. Cahill and William Hud-
son, copartners, doing business at Belding, Mich., under
the firm name of Cahill & Hudson.   The writ issued· on
the 27th day of July, 1899, and was made returnable on
the 5th day of September following.   A proper inventory
and appraisal of the goods was made on the date of the
126 MICH.—12.

levy.    The affidavit for the writ recited that the names of
the defendants in the attachment suit were George V.
Cahill and William Hudson, and the writ was issued
against George V. Cahill and William Hudson.    After
the issuance of the writ, the plaintiffs discovered that
Cahill's name was not George V. Cahill, but was John
V. Cahill.    On the 12th day of September, 1899, the
sheriff made his return to the writ, with the inventory
and appraisal attached, which return showed that he had
been unable to find either of the defendants, and that
neither of them had been served with the writ.    The next
day the plaintiffs caused an *alias* writ to be sued out
against John V. Cahill and William Hudson as copart-
ners, in which it was recited that John V. Cahill had
been "erroneously named in the original writ as George
V. Cahill," which writ was on the 18th day of September
served upon William Hudson at the city of Greenville,
Montcalm county.    The service on Hudson was made by
delivering to him a certified copy of the *alias* writ,
and certified copy of the original writ, and affidavit,
inventory, and appraisal, and the return of the officer
to the original writ; and on the 4th day of October
the sheriff made his return to the *alias* writ, with his
doings thereunder.

The plaintiffs in this case claimed the goods by virtue
of two bills of sale, dated the 10th day of July, 1899, and
the 5th day of July, 1899, and under that claim, on the
18th day of August, replevied the goods from defendant,
Fales, who was holding them by virtue of the writ of
attachment; and afterwards, and on the 30th day of
August, 1899, filed their declaration in this cause, to
which the defendant pleaded the general issue, and gave
notice thereunder that he would justify his possession by
virtue of the writ of attachment.

The case came on to be heard before the court at the
city of Ionia on the 22d day of December, 1899, before a
jury.    The plaintiffs gave evidence tending to show their
right of possession by virtue of their bills of sale, and

rested.    Then the defendant, to maintain his case, offered
in evidence the writ of attachment, together with the
inventory and affidavit, and the returns and proceedings
of the officers had in the attachment case.    To the intro-
duction of the attachment proceedings, plaintiffs, by their
attorney, made the following objections:

1. That there was no legal service made upon either of
the defendants, and only an attempted service made upon
Hudson, which was void because the court had no juris-
diction to issue an *alias* writ of attachment.

2. That the affidavit was defective because it did not
allege that each defendant was guilty of the wrong
charged.

3. That the affidavit was not sufficient to support a writ
of attachment against John V. Cahill and William Hud-
son, copartners, and no new affidavit was made, and the
existing affidavit was not amendable.

4. That the court obtained no jurisdiction in the attach-
ment suit, because it does not appear from the officer's
return that he had attached the property of John V.
Cahill and William Hudson.

Counsel for defendant, Fales, thereupon moved to
amend the writ and affidavit in the attachment case,
changing the words " George V. Cahill " to "John V.
Cahill."    This motion was denied, and the court directed
the verdict in favor of plaintiffs upon the following
grounds:

(*a*) That the affidavit in the attachment case did not
state with sufficient certainty that the wrong or fraud was
committed by each of the individuals comprising such
copartnership.

(*b*) That the misnomer of George V. Cahill for John V.
Cahill in the affidavit for the writ of attachment could not
be cured by amendment.

(*c*) That there is no authority in law for the issuance of
an *alias* writ of attachment.

It is conceded that the statute does not authorize the
issuance of an *alias* writ of attachment, nor prohibit it;
but counsel for defendant contend that the question is
governed and controlled by Circuit Court Rule No. 1,

subd. *b*, which provides for the issuing of *alias* and *pluries* original writs. On the other hand, counsel for plaintiffs claim that an attachment is not an original writ, but a special writ issuing under the statute, which must be strictly followed, and that it resembles an original writ only in the fact that it is prescribed by the statute that it shall bear an indorsement for security for costs, and that it is to be dated and signed and made returnable on the same days as original writs. It is the further claim of counsel for plaintiffs that no rule of court can extend the power of the statute and give validity to proceedings not in compliance with it; that the court cannot, therefore, by rule, aid in enlarging the writ by providing for an *alias*.

We think the Supreme Court had ample power to make this rule, and that it applies, and was intended to apply, to writs of attachment. The Constitution of this State, by article 6, § 5, provides:

"The Supreme Court shall, by general rules, establish, modify, and amend the practice in such court and in the circuit courts, and simplify the same."

Stevens, in his new work on Michigan Practice (section 22 *d*), says in regard to this rule:

"Prior to the adoption of the revised rules, there was no provision for the issue of an *alias* writ of attachment. The rule now applies to all original writs, and authorizes an *alias* and *pluries* writ, under certain restrictions. * * * If the only purpose in issuing the *alias* or *pluries* writ is service on the defendant, its function is only that of a summons, and in such case no new affidavit is necessary; but, if the *alias* or *pluries* writ is desired for the purpose of authorizing a seizure of property, a new affidavit must be made and annexed to the *alias* or *pluries* writ, in order to meet the requirement that no writ of attachment shall be executed without having annexed thereto an affidavit, and to show a continuance of the cause for attachment down to the time of issuing the *alias* or *pluries* writ. It is obviously improper to detach the original affidavit from the original writ, and annex it to an *alias* or *pluries;* and a new affidavit, where property is to be

seized, would seem absolutely essential to the validity of the *alias* or *pluries* writ."

In the present case, the property had been seized under the original writ, and all that remained to be done was to summon the defendants, and service was had in accordance with the rule.    The case is very different from one where the statute has provided a rule of practice, as in the case of *Ismond* v. *Scougale*, 119 Mich. 503 (78 N. W. 546), cited by plaintiffs' counsel. An *alias* writ is permitted to issue in replevin cases.    *Maxon* v. *Perrott*, 17 Mich. 332 (97 Am. Dec. 191); *People* v. *Mecosta Circuit Judge*, 26 Mich. 414.    These cases were decided, however, before the revision of the rules; and counsel for plaintiffs contend that this being a common-law writ, and not like an attachment writ, the same rule cannot be applied.    Counsel cite the case of *O'Brien* v. *Haynes*, 61 Ill. 494, in which it was held that an *alias* writ of replevin could be issued, and also the case of *Pack, Woods & Co.* v. *American Trust & Sav. Bank*, 172 Ill. 192 (50 N. E. 326), in which the same court held that there was nothing in the statute which authorized the issuing of an *alias* writ of attachment.    Other Illinois cases are cited to the same rule.    Those cases, however, have no bearing upon the question involved here.    We think that, under the power vested in the Supreme Court by our Constitution, the rule was properly made, and that it has the same force and effect as a statutory provision.    The court was therefore in error in holding that no *alias* writ could issue.

We think the affidavit sufficiently charged both defendants with a wrong.    It recites that "this deponent has good reason to believe, and does believe, that the said George V. Cahill and William Hudson have assigned, disposed of, and concealed their property with intent to defraud their creditors."    This question is ruled by *Smith* v. *Runnells*, 94 Mich. 617 (54 N. W. 375); *Cottrell* v. *Hatheway*, 108 Mich. 619 (66 N. W. 596).

We think the court erred in holding the attachment

proceedings void by reason of the misnomer in the given name of Mr. Cahill. Under the decisions of this court, the defendants were sufficiently described, and no officer or other person could have made any mistake as to the parties described in the affidavit and writ of attachment. Cahill & Hudson was the only firm of that name in the little village of Belding. It is not, and cannot be, urged that the defendants were not sufficiently identified. The mistake was corrected in issuing the *alias* writ, and fully explained. That suit was still pending when this one was tried. In my judgment, the case is ruled by *Barber* v. *Smith*, 41 Mich. 138 (1 N. W. 992), and *Emerson* v. *Detroit Steel & Spring Co..* 100 Mich. 127 (58 N. W. 659).

Judgment reversed, and new trial ordered.

The other Justices concurred.