PEOPLE *v.* CHAMBERS

1. CRIMINAL LAW—INSANITY OF DEFENDANT—DETERMINATION—RETROACTIVITY OF STATUTE.

  Statute prescribing procedure for determination of mental competency of accused persons to stand trial, and which became effective on March 10, 1967, is not retroactive (CL 1948, § 767.27a).

2. SAME—INSANITY OF DEFENDANT—METHOD OF DETERMINATION—CONCLUSIVENESS OF CERTIFICATION.

  Certification by superintendent of State hospital that one accused of crime and found incompetent to stand trial has regained his sanity does not preclude trial court from inquiring further into defendant's competence under statute in effect up to March 10, 1967 (CL 1948, § 767.27).

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 10.
[2] 21 Am Jur 2d, Criminal Law § 51 *et seq.*
[3] 21 Am Jur 2d, Criminal Law §§ 31, 36.
[4] 21 Am Jur 2d, Criminal Law § 45 *et seq.*
[5, 6] 21 Am Jur 2d, Criminal Law § 252.

3. SAME—DUE PROCESS—COMPETENCE OF DEFENDANT TO STAND
TRIAL.

The conviction of an accused while he is legally incompetent violates due process.

4. SAME—DUE PROCESS—DETERMINATION OF COMPETENCE OF DEFENDANT TO STAND TRIAL—REQUEST FOR HEARING.

The court has the duty to safeguard the right of a person accused of crime to be tried only if he is competent to stand trial, and the court should conduct a hearing to determine competence if competence is in doubt even if such hearing is not requested by the accused (CL 1948, § 767.27, as amended by PA 1966, No 266).

5. SAME—DUE PROCESS—RIGHT TO SPEEDY TRIAL—SANITY HEARING.

The right of an accused to be tried only when mentally competent must be safeguarded and delay of trial caused by hearings to determine competency to stand trial does not violate accused's constitutional right to a speedy trial (US Const, Am 6; Const 1963, art 1, § 20; Cl 1948, § 768.1).

6. SAME—DUE PROCESS—SPEEDY TRIAL—INQUIRY INTO COMPETENCE OF DEFENDANT TO STAND TRIAL.

Defendant arraigned on murder charge in April, 1956, subjected to a hearing on his mental competence and found incompetent to stand trial in June, 1956, certified by superintendent of State institution as restored to sanity in February, 1962, subjected by court to hearings on his competence in July and August, 1962, and again found incompetent, subjected to · treatment at State institution until November, 1965, subjected by court to hearings on his competence in November, 1965, and found competent to stand trial, and thereupon tried and convicted of first degree murder, *held,* not denied the speedy trial guaranteed by the United States and Michigan Constitutions.

Appeal from Clare, O'Keefe (Dennis J.), J. Submitted Division 3 February 7, 1968, at Grand Rapids. (Docket No. 3,565.) Decided October 25, 1968. Leave to appeal denied February 18, 1969. 381 Mich 802.

Lonnie Chambers was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *J. Franklin Trucks,* Prosecuting Attorney, for the people.

*Lewis L. Hole,* for defendant.

Bowles, J. The central issue raised by defendant on appeal is whether or not he was denied a speedy trial as guaranteed by the United States and Michigan Constitutions. The Sixth Amendment of the Constitution of the United States reads in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial". Const 1963, art 1, § 20 provides: "In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury". The State mandate has been implemented by CL 1948, § 768.1 (Stat Ann § 28.1024), which reads: "The people of this state and persons charged with crime are entitled to and shall have a speedy trial and determination of all prosecutions and it is hereby made the duty of all public officers having duties to perform in any criminal case, to bring such case to a final determination without delay except as may be necessary to secure to the accused a fair and impartial trial."

Defendant Lonnie Chambers was arraigned on April 23, 1956 on the charge that he "feloniously, wilfully and with malice aforethought did kill and murder one John Potter." On June 1, 1956 the trial court ordered a hearing to be held inquiring into defendant's mental condition, pursuant to CLS 1961, § 767.27 (Stat Ann 1954 Rev § 28.967),[1] which reads, in part:

"When a person accused of any felony shall appear to be insane or shall have been acquitted upon trial

[1] Repealed by PA 1966, No 266.

upon the ground of insanity, the court, being certified by the jury or otherwise of the fact, shall carefully inquire and ascertain the issue of insanity. The court shall fix the time and place for the hearing of said issue, and shall cause notice thereof to be served on the party filing the petition or making the suggestion of insanity for or on behalf of such person or on 1 or more of the nearest relatives or friends of such person, if known. The court shall call 2 or more reputable physicians and other credible witnesses to testify at said hearing and the prosecuting attorney to aid in the examination, and if it be deemed necessary to call a jury for that purpose, is fully empowered to compel the attendance of witnesses and jurors. Such alleged insane person may be represented by counsel who may appear and take part in the proceedings, cross-examine the witnesses and produce witnesses and testimony for and on behalf of such person. If it is claimed that such person became insane after the commission of the felony with which he is charged and before or during the trial thereon, the test on the trial of such issue shall be whether such person is capable of understanding the nature and object of the proceedings against him and of comprehending his own condition in reference to such proceedings and of assisting in his defense in a rational or reasonable manner. If such person is found insane, the judge of said court shall order that he be discharged from imprisonment and that he be turned over to the sheriff for safe custody and removal to the Ionia state hospital, to which hospital such person shall be committed to remain until restored to sanity. When such person shall be restored to sanity, and that fact has been determined by the superintendent of said hospital or by any other proceeding authorized by this section, the said superintendent of said hospital shall forthwith certify that fact in writing to said judge and prosecuting attorney. The judge shall thereupon immediately require the sheriff without delay to bring such person from the said

hospital and place him in proper custody until he is remanded to prison, brought to trial or judgment, as the case may be, or is legally discharged."

The hearing was held on June 6, 1956, and at its conclusion the court ruled that the defendant was an insane person and incapable of assisting in his defense. The defendant was then committed to the Ionia state hospital.

On February 16, 1962 the superintendent of the Ionia state hospital certified to the court and to the prosecutor that the defendant had been restored to sanity. On May 18, 1962 the prosecutor filed a petition requesting that the court inquire into the defendant's mental condition to ascertain whether the defendant was capable of assisting in his defense. This hearing was held on July 30, 1962; two examining doctors testified that the defendant was capable of assisting in his defense. The court appointed additional doctors to examine the defendant. After such examination and testimony, on August 23, 1962 the superintendent of Ionia state hospital was questioned with respect to the defendant's mental condition. The superintendent withdrew his certification of sanity and defendant was returned to the Ionia state hospital for further medical treatment.

Defense counsel filed a petition for writ of habeas corpus in October, 1965 and the next month the prosecuting attorney filed another petition to inquire into respondent's sanity. The court, after the appointment of examining physicians and considering their testimony, determined that the defendant was competent to stand trial. After denial by this court of leave for emergency appeal, the defendant was tried and convicted of first degree murder and thereafter was sentenced to life imprisonment.

Main reliance is placed by defendant on *Klopfer*
v. *North Carolina,* 386 US 213 (87 S Ct 988, 18 L
Ed 2d 1), decided March 13, 1967. The Court de-
scribed the issue as "whether a State may indefinitely
postpone prosecution on an indictment without
stated justification over the objection of an accused
who has been discharged from custody." Under
the procedure of the State of North Carolina, when
the prosecuting attorney determines that he does
not desire to proceed further with the prosecution
he may take a *nolle prosequi,* thereby declaring "that
he will not, at this time, prosecute the action fur-
ther. Its effect is to put the defendant without
day, that is, he is discharged and permitted to go
whithersoever he will, without entering into a recog-
nizance to appear at any other time."

The taking of the *nolle prosequi* does not per-
manently terminate the proceedings on the indict-
ment and the case may be restored to the trial
docket when ordered by the judge upon the prosecut-
ing attorney's application. If the prosecuting at-
torney petitions the court to *nolle prosequi* the case
"with leave", the consent required to reinstate the
prosecution at a future date is implied in the order
and the prosecuting attorney may have the case
restored for trial without further order. The statute
of limitations remains tolled.

Klopfer was indicted for the crime of criminal
trespass, a misdemeanor punishable by fine and
imprisonment in an amount and duration determined
by the court in the exercise of its discretion. He
was charged with having entered a restaurant and
having refused to leave the premises after being
ordered to do so. On trial in March, 1964, the jury
failed to reach a verdict and several weeks prior to
the April, 1965, criminal session the prosecuting at-
torney informed petitioner of his intention to have

a *nolle prosequi* entered in the case, which was opposed by petitioner through his counsel. The prosecuting attorney finally moved the court to continue the case for yet another term rather than to move for *nolle prosequi*. The court granted his motion. The calendar for the August, 1965 session did not list petitioner's case for trial, and through counsel he filed a motion expressing his desire to have the charge pending against him "permanently concluded". The trial judge considered the matter, and on August 9, 1965 the prosecuting attorney moved the court that the State be permitted to take a *nolle prosequi* with leave and the motion was granted against petitioner's objection. The United States Supreme Court held that petitioner had been denied his right to a speedy trial. Chief Justice Earl Warren reviewed the history of the right to a speedy trial and concluded (386 US, pp 225, 226):

"* * * That this right was considered fundamental at this early period in our history is evidenced by its guarantee in the constitutions of several of the States of the new nation, as well as by its prominent position in the Sixth Amendment. Today, each of the 50 States guarantees the right to a speedy trial to its citizens."

For the purposes of this opinion we have assumed, although it has not yet been so held by the United States Supreme Court, that *Klopfer* is retroactive, as *Gideon* v. *Wainwright* (1963), 372 US 335 (83 S Ct 792, 9 L Ed 2d 799) was held to be.[2]

As to the delay here, defendant concedes the delay occasioned by his incarceration in Ionia state hospital from July 22, 1956 until February 16, 1962 was reasonable delay since it had been determined that

---

[2] *Doughty* v. *Maxwell* (1964), 376 US 202 (84 S Ct 702, 11 L Ed 2d 650).

he was an insane person and incapable of assisting in his defense. However, it is claimed that the delay thereafter was a denial of defendant's right to a speedy trial since on February 16, 1962, the superintendent of the Ionia state hospital had certified to the court and the prosecutor that the defendant had been restored to soundness of mind. It is urged that when the people on May 18, 1962, petitioned the court to inquire again into the defendant's mental condition, which was done on July 30, 1962, and again on November 12, 1965, the court hearings held on these petitions were not sanctioned by law, specifically CL 1948, § 767.27 (Stat Ann § 28.967), which mandates:

"* * * The judge shall thereupon immediately require the sheriff without delay to bring such person from the said hospital and place him in proper custody until he is remanded to prison, brought to trial or judgment, as the case may be, or is legally discharged. * * *"

It should be recognized that the statutory procedure has been changed by the repeal of CL 1948, § 767.27 (Stat Ann § 28.967) and the substitution of a new statute, CL 1948, § 767.27a, as added by PA 1966, No 266 (Stat Ann 1968 Cum Supp § 28.966 [11]). Section 27a is of importance, particularly subsections (5) through (8):

"(5) If the defendant is adjudged to be incompetent to stand trial, he shall be committed to the department of mental health for treatment in a public institution approved for the purpose by the department of mental health.

"(6) If at any time within 18 months of the entry of the order of commitment entered under section (5) the defendant has regained competence to stand trial, in the opinion of the department of mental health, it shall certify its opinion, together with a

detailed psychiatric report, to the committing court
and shall return the defendant to the control of that
court. The return shall be made by the sheriff at
the request of the department. The court shall im-
mediately hear and determine the question of com-
petence to stand trial. The certificate and psychi-
atric report shall be admissible as evidence in the
hearing, but not for any other purpose in the pend-
ing criminal proceedings.

"(7) If after the defendant has been committed
to its custody under subsection (5), the department
of mental health believes that the defendant cannot
recover competence to stand trial within 18 months
from the entry of the order of commitment, or
if by the expiration of 18 months from the entry
of the order of commitment the defendant has not
regained competence to stand trial, in the opinion
of the department of mental health, the department
shall certify its opinion, together with a detailed
psychiatric report, to the probate court in the county
from which the defendant was originally committed.
The probate court shall receive the certification and
psychiatric report as the equivalent to a petition
and physician's report under section 11 of Act No.
151 of the Public Acts of 1923, as amended, being
section 330.21 of the Compiled Laws of 1948, and
shall proceed to determine the matter as provided
in that section.

"(8) If the probate court which has received the
case under subsection (7) determines that the re-
spondent is mentally diseased and shall be commit-
ted, it shall enter an appropriate order. If the pro-
bate court determines that the respondent is not
to be committed, it shall transfer the case to the
circuit court which originally determined the re-
spondent to be incompetent to stand trial. The orig-
inal committing court shall proceed to hearing *de
novo*. If the original committing court determines
that the respondent is competent to stand trial, it
shall proceed to trial. If the original committing

court determines that the defendant is still incompetent to stand trial and enters an order to that effect, the decision of the probate court is reversed, and the original committing court shall immediately commit the defendant to the department of mental health for treatment in an appropriate state hospital, until discharged in accordance with Act No. 151 of the Public Acts of 1923, as amended, being sections 330.11 to 330.71 of the Compiled Laws of 1948. The county prosecutor shall be notified and given an opportunity to be heard in any proceedings held under this subsection."

Under the new procedure a person committed to Ionia because of incompetency to stand trial on a criminal charge can be held there on the original order for 18 months. If a certificate of competency is issued by the appropriate officer within 18 months, subsection (6) provides for a second hearing and a determination of defendant's competency to stand trial. If 18 months expire without the certificate of competency forthcoming, the case is transferred to the civil side for commitment proceedings in the probate court, and should the probate court determine that commitment is not warranted, the case is returned to the original committing court (criminal) where a *de novo* hearing is held and defendant is either (1) brought to trial if found competent, or (2) the probate court's order is reversed and the defendant recommitted for treatment until discharged.

The effective date of the act is March 10, 1967. Defendant here was convicted on March 3, 1967.[3]

---

[3] Professor B. J. George, Jr., writing in the Michigan State Bar Journal, Vol 46, No 2, February 1967, noted as to the new statute, (p 19):

"This is one of the most significant changes intended by the legislation. Until now, the return to court has been handled exclusively as an administrative manner. [*sic*] *If there were judicial dissatisfaction with the administrative return, the only course of action*

Fundamentally, the defendant urges that the rationale of the controlling statute is that the determination of competency to stand trial is an administrative determination; that there must be literal compliance with the statute by the trial judge, and that he does not have either an independent right or responsibility to go beyond a certification of the superintendent of the Ionia state hospital.

We do not so construe the statute. The language of CL 1948, § 767.27 (Stat Ann § 28.967) provides:

"* * * The judge shall thereupon immediately require the sheriff without delay to bring such person from the said hospital and place him in proper custody until he is remanded to prison, brought to trial or judgment, as the case may be, or is legally discharged.  * * *"

If the legislature intended to circumscribe completely the trial judge and deprive him of any discretion in the premises, the legislature might simply have provided "until he is brought to trial". Rather, the legislature has provided for a number of alternatives, that is, remand to prison, a bringing to trial or to judgment, as the case may be, or legal discharge.

The courts' actions in 1962 and 1965 in ordering a hearing to determine competency to stand trial protected appellant's constitutional right to a fair trial. The conviction of an accused person while he is legally incompetent violates due process. *Bishop* v. *United States* (1956), 350 US 961 (76 S Ct 440, 100 L Ed 835). State procedures must be adequate to protect this right. *Pate* v. *Robinson*

---

open was to have a new allegation of incompetency and a new commitment to Ionia Hospital. The hospital in turn might return the man immediately, and the badminton game continue indefinitely with the defendant as shuttlecock. Because of this, courts usually perforce accepted the return as a sufficient indication that the defendant was competent." (Emphasis supplied.)

(1966), 383 US 375 (86 S Ct 836, 15 L Ed 2d 815).
See, also: *United States* v. *Follette* (CA 2, 1966),
367 F2d 559; *Hansford* v. *United States* (1966), 124
App DC 387 (365 F2d 920); *Clark* v. *Beto* (CA 5,
1966), 359 F2d 554; *United States* v. *Walker* (CA 6,
1962), 301 F2d 211; *Thomas* v. *Cunningham* (CA 4,
1963), 313 F2d 934; *United States* v. *Knohl* (CA 2,
1967), 379 F2d 427; *Janovic* v. *Eyman* (Ariz, 1967),
276 F Supp 862. In *Pate, supra,* the Supreme Court
granted a petition for habeas corpus filed by one
Robinson who had been convicted of murder. The
Court said that the defendant had been denied a con-
stitutional right to a hearing on his competency to
stand trial even though no formal motion for a hear-
ing was made by Robinson's counsel; Robinson's
competency was in issue because Robinson "had a
long history of disturbed behavior." 86 S Ct, p 842.
Thus, the court has a constitutional duty to safe-
guard the right of a party to be tried for a crime
only when mentally competent even if the individual
does not ask for a hearing.

A speedy trial means a trial regulated by fixed
rules of law, and delay created by operation of those
rules of law is not included in the meaning of the
constitutional provision. See *Nixon* v. *State* (1844),
10 Miss 497, 507; *Arrowsmith* v. *State* (1914), 131
Tenn 480 (175 SW 545, 547, LRA 1915 E, 363); *Ex
parte Munger* (1925), 29 Okla Crim 407 (234 P 219,
221). See, also, *People* v. *Den Uyl* (1948), 320 Mich
477.

Delay caused by a hearing to determine an ac-
cused's competency to stand trial does not violate
one's right to a speedy trial. *United States* v. *Davis*
(CA 6, 1966), 365 F2d 251; *Johnson* v. *United States*
(CA 10, 1964), 333 F2d 371; *Nickens* v. *United
States* (1963), 116 App DC 338 (323 F2d 808), *cert.
den.* (1964), 379 US 905 (85 S Ct 198, 13 L Ed 2d

178); *Howard* v. *United States* (CA 5, 1958), 261 F2d 729. As noted in *Hicks* v. *Recorder's Court of Detroit* (1926), 236 Mich 689, 690:

"In view of this constitutional provision it becomes necessary to inquire what a speedy trial means. We apprehend it means such reasonable time under all the attendant circumstances as will give the people an opportunity to present its case in court. * * * A speedy trial does not mean that the defendant is entitled to have his trial commence immediately after being bound over to the trial court. What would be a reasonable time in one case would be perhaps unreasonable in another. The question might be affected by the gravity of the offense, the number of witnesses involved, the terms of court, and many other circumstances. Owing to this, much must necessarily be left to the discretion of the trial court. The trial court must exercise its best judgment upon such applications, keeping in mind, however, the defendant's constitutional rights."

The actions taken by the trial judge and by the prosecuting attorney through successive hearings were calculated to insure the protection of the rights of defendant and specifically to make certain that when he was brought to trial he was competent to stand trial. *Klopfer* is not controlling since the trial here was delayed with legal justification.

As noted by Justice WIEST in *People* v. *Janek* (1939), 287 Mich 563, 567:

"* * * Its [CL 1948, § 767.27] salutary provisions may be invoked by the prosecution or in behalf of the accused, and the statute saving an insane person from being tried for a felony while under such a disability preserves, instead of deprives him of due course of law."

See, also, *Whalem* v. *United States* (CA DC, 1965), 346 F2d 812.

On the record here made, we hold that no error is found. The conviction is affirmed.

FITZGERALD, P. J., and J. H. GILLIS, J., concurred.