## PEOPLE v. KERRIDGE

1. TRIAL—CRIMINAL LAW—SHACKLING—GAGGING OF DEFENDANT—PRESENCE IN COURT REQUIRED.

   Shackling and gagging of defendant to insure his presence and decorum in court was justified where he was uncooperative, tried to leave the courtroom on numerous occasions, and repeatedly interrupted the jury selection proceedings by using abusive and profane language (MCLA § 768.3).

2. TRIAL — CRIMINAL LAW — FELONY — DEFENDANT'S PRESENCE REQUIRED.

   A defendant cannot be tried for a felony in Michigan unless he is present at trial (MCLA § 768.3).

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 240.
[2] 21 Am Jur 2d, Criminal Law §§ 272, 288, 308.
[3] 21 Am Jur 2d, Criminal Law §§ 48, 65, 69, 74.
[4] 20 Am Jur 2d, Courts § 85.
[5] 21 Am Jur 2d, Criminal Law §§ 64, 68.
[6] 21 Am Jur 2d, Criminal Law §§ 318–323.
[7] 21 Am Jur 2d, Criminal Law § 321.
[8] 46 Am Jur, Robbery § 45.

3. CRIMINAL LAW—TRIAL—DEFENDANT'S COMPETENCY—STATUTORY COMPLIANCE—ABSENCE OF COURT RULE.

A psychiatric examination of defendant by a court after defendant's appointed counsel raised the question of defendant's competency to stand trial satisfied the then existing statutory requirements regarding the establishment of defendant's competency, in the absence of any court rule on that subject (MCLA § 767.27a).

4. COURTS—COURT RULE—RETROACTIVITY.

A court rule is not retroactive.

5. CRIMINAL LAW—TRIAL—DEFENDANT'S COMPETENCY—COURT RULE —METHOD OF DETERMINATION.

The proper method for determination of a defendant's competency to stand trial is covered by a 1969 court rule which must be followed when the question of defendant's competency to stand trial is properly raised (GCR 786, added 1969).

6. CRIMINAL LAW—ASSIGNED COUNSEL—SELECTION.

An indigent defendant has no right to select the attorney to be assigned to represent him.

7. CRIMINAL LAW—ASSIGNED COUNSEL—DISMISSAL.

Defendant's request to discharge his appointed trial counsel was properly denied where four other counsel had been previously assigned to him for one reason or another (GCR 1963, 785).

8. CRIMINAL LAW—ROBBERY UNARMED—EVIDENCE—ADMISSIBILITY— CONNECTION WITH DEFENDANT.

A package of Kool cigarettes and an aerosol can were material evidence and were sufficiently connected with defendant so as to make them admissible at his trial for robbery unarmed, where the complaining witness testified that the defendant used an aerosol spray on him, while complainant handed defendant a package of Kool cigarettes, and another witness testified that when defendant was apprehended shortly thereafter, he had the same type of cigarettes and an aerosol can on his person (MCLA § 750.530).

Appeal from Recorder's Court of Detroit, Frank G. Schemanske, J. Submitted Division 1 October 7, 1969, at Detroit. (Docket No. 6,145.) Decided November 25, 1969.

Harry James Kerridge was convicted by a jury of robbery unarmed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Richard C. Tripp,* for defendant on appeal.

Before: FITZGERALD, P. J., and McGREGOR and V. J. BRENNAN, JJ.

FITZGERALD, P. J. Defendant Kerridge was convicted in 1967 of robbery unarmed* and sentenced to 7 to 15 years in prison. A motion for a new trial on meritorious grounds was filed and granted late that year. The new trial began in April, 1968, and the events during that trial are the subject of this appeal. Following his conviction on the second trial, he was again sentenced to 7 to 15 years in prison with credit for previously served time.

It became evident early in the second trial that the defendant's distrust of his attorney and his disdain for the court proceedings knew few bounds. He first informed his attorney that he was not ready for trial, but gave no reason why. When brought into the courtroom, he attempted to leave when his case was called. He repeatedly informed the court that he was not ready for trial without giving a reason and further stated, "I am not going to stand trial." It was at this point that his attorney suggested to the court that something was "radically wrong" with defendant and the court called in the chief psychia-

---

* MCLA § 750,530 (Stat Ann 1954 Rev § 28.798).

trist of the recorder's court to examine defendant as
to his competency to stand trial.

Following the examination, the psychiatrist ap-
peared in court, but the defendant remained nude in
his cell where he had undressed himself. The court
examined the psychiatrist who said that defendant
was oriented for time, place, and person and that
he was so far free from mental defects, and that he
could aid and assist counsel and understand the
nature of the charges pending against him if he
wanted to. The physician further opined that even
his last act of taking off his clothes was not a psy-
chotic symptom, but an aggressive act in holding the
court at bay.

Following the psychiatrist's testimony as to the
defendant's competency, the court ordered the de-
fendant dressed by force and strapped to a chair so
that the trial could proceed. Defendant immediately
began using vile, disruptive profanity and requested
that a new attorney be appointed to represent him.
The court ordered the trial to proceed and defend-
ant shouted, "Just tape my mouth up.    *   *   *   I
won't stand trial." When the court suggested that
he might have to be gagged, he declared, "That's
what you got to do." As prospective jurors filed into
the courtroom, defendant interrupted the proceed-
ings by using abusive and profane language, com-
pelling the court to excuse the prospective jurors
and to cause the defendant to be gagged. Follow-
ing a raucous jury selection in which defendant pro-
fessed to be dissatisfied with all of them, the trial
began. The gag was removed and, following a lunch-
time break, the defendant apologized to the court for
his behavior. For the afternoon session and the
balance of the trial, defendant remained unshackled
and ungagged.

Following conviction, and at time of sentence, defendant again apologized to the court for his outbursts, stating, "At that time I was a little upset and nervous."

On appeal, defendant challenges the shackling and gagging procedure; the method in which the psychiatric examination was conducted; the retention of his attorney by the trial court; and the admission into evidence of cigarettes and an aerosol can.

On his first assignment of error, we do not feel that the court was unjustified in ordering defendant restrained and gagged. By statute, a defendant cannot be tried for a felony in Michigan unless he is present at the trial. MCLA § 768.3 (Stat Ann 1954 Rev § 28.1026). Careful scrutiny of the record shows the trial judge acted properly. The record is replete with instances of hostility and abuse and other actions on the part of defendant whereby he was determined not to stand trial. He was uncooperative and tried to leave the courtroom on numerous occasions. He was gagged only during the short period he insisted upon shouting obscenities. Although we recognize this should be a last resort, the court's action here appears to have been justified. *People* v. *William L. Thomas* (1965), 1 Mich App 118; *People* v. *Duplissey* (1968), 380 Mich 100.

Defendant's most meritorious assignment of error concerns the question of whether he was in fact incompetent to stand trial. Defense counsel in his brief relies on MCLA § 767.27 (Stat Ann 1954 Rev § 28.967), which, alas, at the time of trial had been repealed by PA 1966, No 266, effective March 10, 1967. The statute in effect at the time of this trial was MCLA § 767.27a (Stat Ann 1969 Cum Supp § 28.966[11]), which provides in part as follows:

"(1) A person accused of a crime who is incompetent to stand trial shall not be proceeded against

while he is incompetent. A person is incompetent to stand trial within the meaning of this section if he is incapable of understanding the nature and object of the proceedings against him, of comprehending his own condition in reference to the proceedings, or of assisting in his defense in a rational or reasonable manner.

"(2) The issue of competence to stand trial may be raised by the prosecuting attorney, defense counsel, by any interested person on leave of the court, or by the court on its own motion. The time and form of the procedure incident to raising the issue of competence shall be provided by court rule.

"(3) Upon a showing that the defendant may be incompetent to stand trial, the court shall commit the defendant in the criminal case to the custody of the center for forensic psychiatry or to any other diagnostic facility certified by the department of mental health for the performance of forensic psychiatric evaluation. The commitment shall be for a period not to exceed 60 days. Within that period the center or other facility shall prepare a diagnostic report and recommendations which are to be transmitted to the committing court.

"(4) Upon receipt of the diagnostic report and recommendations the sheriff shall immediately return the defendant to the commiting court and the court shall immediately hear and determine the issue of competence to stand trial. The diagnostic report and recommendations shall be admissible as evidence in the hearing, but not for any other purpose in the pending criminal proceedings."

Instead of a meticulous following of this procedure, the transcript shows the following:

"*Mr. Harris:* Is there any chance to refer him? Something is radically wrong with him.

"*The Court:* It may be best if I refer him to the clinic first. Call Doctor Wallaert! * * *

"*The Court:* Now, as an afterthought of the court, that I would call you down as the chief psychiatrist of the recorder's court and you examine him and see whether or not he is competent to stand trial. If he is competent to stand trial, we will go ahead; if he isn't, why we will take other action.

"*Doctor Wallaert:* All right, sir."

Later, after the examination, the following transpired:

"*The Court:* The defendant is not here. The police officer has just informed me that the defendant undressed himself in the cell. He is completely nude at the present time.

"*Doctor Wallaert:* We can clear the court of women and have the trial if he wants to have it that way.

"*The Court:* I can't very well do that. Doctor, I asked you to go in to talk to the defendant, is that correct?

"*Doctor Wallaert:* That's correct.

"*The Court:* And since I have asked the officers— strike that. After you had examined the defendant, did you come into my chambers and inform me that the defendant could stand trial?

"*Doctor Wallaert:* I did."

When the court examined Dr. Wallaert, he opined that defendant was competent to stand trial. Then defendant was dressed, strapped into a chair, gagged, and the trial began.

It might be argued by defense counsel (though it was not) that the method used was violative of the statute, *supra.* However, several important *indicia* lead us to believe that this is not the fact. Section (2) of the statute, *supra,* states that the time and form of the procedure incident to raising the issue of competence shall be provided by court rule. Although the statute was effective in 1967, the court

rule pertinent thereto was not promulgated until May 15, 1969 (GCR 1963, 786), and calls for a written motion before trial on behalf of defendant or the raising of the issue during trial only by the trial court. It appears to us that in the absence of the court rule, the trial court in the instant appeal was seeking the "showing" called for in § 3 of the statute, *supra,* and that examination by a psychiatrist in the manner done satisfied the statute at the time of defendant's trial. Had the psychiatrist stated him to be incompetent, the next step would have been referral of the defendant for forensic psychiatric examination.

The court rule promulgated in 1969 now dictates the proper method for determination of a defendant's competency to stand trial. There can be no argument as to retroactivity of a court rule and accordingly we hold that the actions of the trial court at the time of defendant's 1968 trial satisfied the statute. The 1969 court rule now prescribes the approved method and must be followed when the question of defendant's competency to stand trial is properly raised.

Defendant again relies for his third point, *i.e.,* dismissal of his attorney, on ancient precedent in citing *People* v. *Henley* (1965), 2 Mich App 54, perhaps being unaware of the reversal thereof in *People* v. *Henley* (1969), 382 Mich 143.

This Court has stated on several occasions that a defendant does not have a right to select the attorney that is to be assigned to represent him. *People* v. *Jones* (1968), 11 Mich App 703. See, also, *People* v. *William L. Thomas* (1965), 1 Mich App 118. There is ample evidence in the record of defendant's status as an indigent, four counsel having already been assigned to him for one reason or another. It would appear that the State has satisfied its obliga-

tion under GCR 1963, 785, and within the limitations of *Henley, supra,* no error was committed and the trial court had no clear choice but to deny defendant's request to discharge his trial counsel.

One final issue remains for disposal wherein defendant argues that the court erred in admitting an aerosol can and a package of Kool cigarettes into evidence, stating there was no testimony connecting these items found on the defendant when arrested and the items used to commit the crime. The record belies this contention. The complaining witness testified that the defendant used an aerosol spray on him, while complainant handed defendant a package of cigarettes. A witness testified that when defendant was apprehended shortly thereafter, he had the same type of cigarettes and an aerosol can on his person. These items were material and were sufficiently connected with the defendant so as to make them legally admissible at trial. *People* v. *Becker* (1942), 300 Mich 562. The trial court did not abuse its discretion.

Affirmed.

All concurred.