PEOPLE *v* SHERMAN WILLIAMS
OPINION OF THE COURT

1. CRIMINAL LAW—COMPETENCE—COMMITMENT TO DIAGNOSTIC FACILITY—MANDATORY COMMITMENT.
   Commitment to a diagnostic facility to determine competence to stand trial is mandatory when a motion raising the issue of incompetence is made prior to trial only if a sufficient showing of mental incompetence is made by the party moving for commitment or if other evidence is before the court which raises a bona fide doubt as to the defendant's mental competence to stand trial (MCLA 767.27a; GCR 1963, 786).

2. CRIMINAL LAW—COMPETENCE—COMMITMENT TO DIAGNOSTIC FACILITY—COURT RULE—STATUTES.
   The court rule covering mental competence hearings in criminal trials must be read in the light of the statute to which it refers; the statute provides that the court rule should concern

REFERENCE FOR POINTS IN HEADNOTES
[1-4] 21 Am Jur, Criminal Law § 62 *et seq.*

only matters of time and form, not substance, and thus the court rule is so interpreted (MCLA 767.27a; GCR 1963, 786).

3. CRIMINAL LAW—COMPETENCE—COMMITMENT TO DIAGNOSTIC FACILITY—COURT-APPOINTED PSYCHIATRIST.

A defendant must be committed to a diagnostic center once a sufficient showing of mental incompetence has been made or once other evidence before the court raises a bona fide doubt as to the defendant's competence; court-appointed psychiatrists cannot be substituted for the forensic center commitment (MCLA 767.27a; GCR 1963, 786).

DISSENT BY T. M. BURNS, J.

4. CRIMINAL LAW—COMPETENCE—COMMITMENT TO DIAGNOSTIC FACILITY—MANDATORY COMMITMENT—COURT RULE.

*A court must order a defendant committed for a forensic psychiatric evaluation when the defendant has moved for such an examination; the court has no discretion whether or not to make the commitment.*

Appeal from Genesee, Anthony J. Mansour, J. Submitted Division 2 January 13, 1972, at Lansing. (Docket No. 9903.) Decided February 22, 1972.

Sherman Williams was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, for the people.

*William A. Shaheen, Jr.,* for defendant on appeal.

Before: DANHOF, P. J., and T. M. BURNS and O'HARA,* JJ.

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

O'HARA, J. On May 1, 1970, defendant was found guilty of second-degree murder. He raises but one issue on appeal. It is of serious import to the trial courts of this state.

On April 16, 1970, little more than a week before the scheduled starting date for the trial, the defense counsel filed a praecipe motion requesting that the court order a psychiatric examination of the defendant to determine his mental competency to stand trial. On April 20, 1970, the court held a hearing upon the motion at which time the following transpired:

*"The Court:* The record will show now that Attorney Ronald Black is in the courtroom.

"You may proceed.

*"Mr. Ruhala [for defendant]:* Yes, your Honor. I have brought this motion before the court this morning as a result primarily of the latest findings of the *Walker* hearing,[1] which was held on the 15th, which was last Wednesday.

"I have had considerable difficulty in working with this individual and obtaining information, names, things that happened; getting a coherent statement from him as to what transpired on the night that a shooting occurred at the Giant Ballroom.

. "Reading over the statements that was [*sic*] given to the police, I find they had the very same problem with this man. He's inconsistent; he is incoherent at times; he does not have the sufficient ability to supply me with witnesses' names, although he says he has witnesses. All he can supply me with is the name of Dude or a nickname. It's remarkable a boy 18 years of age wouldn't know somebody by their last name. Or if he knows a street, that he wouldn't know a street number. I can't subpoena people like this. I can't get any help from him.

---

[1] *People v Walker,* 374 Mich 331 (On Rehearing, 1965).

"And after the *Walker* hearing and we went into his educational background and so forth, and listening to him testify on the stand again, I have come to the conclusion that this gentleman should be examined by a psychiatrist to find out whether or not he is capable of assisting me in his own defense. I feel that he is not, your Honor.

*"The Court:* Attorney Black?

*"Mr. Black* [*assistant prosecutor*]: Well, as usual the prosecutor's placed in a precarious position. The people are ready to proceed with the trial of this case. It is in the process of being subpoenaed. But on the other hand, if there is the possibility that he may be incompetent to assist his attorney, maybe he should be examined.

*"The Court:* All right. Thank you, counsel. This matter's now scheduled for trial on Friday, April 24, 1970, as case number two. It's an important case to the defendant, it's an important case to the people, and it's a case that has been scheduled for some considerable period of time. At the criminal call there was no indication that such a motion would be filed.

"The defendant did appear and did testify at the *Walker* hearing, at which time counsel and the court asked questions of the defendant, and the responses, in the court's opinion, were appropriate under the circumstances and did not indicate any lack of ability to comprehend.

"The motion is not timely made. It would be impossible for us to schedule an appointment at the Center for Forensic Psychiatry within a time that would make it possible for us to have a report before Friday of this week.

"The court will deny the motion."

Defendant renewed his motion on the day trial was scheduled to begin. Again the motion was denied, the court then saying:

*"The Court:* No, there's no suggestion that counsel has waited improperly as a trial tactic. I'm just

saying that it could be used improperly if the statutes and the court rule were read as defense counsel wants the court to read it.

"It is my interpretation of the statute and the court rule that the court still has the right to exercise a discretion as to whether a competency hearing can be ordered, and the matters which this court has weighed in making the decision in denying your motion originally was, first of all, that it was too late, and, secondly, that the court has had the opportunity to hear this witness testify and has watched him testify and is satisfied that his answers were clear and direct; * * * that he appears to be able to assist counsel, except that he appears willing to admit that the statements given by him to the police were voluntarily and knowingly, understandingly given with a waiver of his constitutional rights.

"Now, if we have to start presuming that a person who voluntarily admits on the stand that he's guilty of an offense is not competent to stand trial, I think we're carrying things a little too far, and I'm sure that's not the rule in this state.

"The motion will be again denied."

Subsequently, the court suggested, and the parties *agreed,* that a local psychiatrist examine the defendant. The case was adjourned for four days, after which time the local psychiatrist reported his finding that the defendant was competent to stand trial. Trial was thereupon commenced and completed.

The issue before this Court is whether or not the trial court committed error in not granting the defendant's motion made prior to trial for a psychiatric commitment pursuant to MCLA 767.27a; MSA 28.966(11), as supplemented by GCR 1963, 786.

MCLA 767.27a; MSA 28.966(11) is originally 1966 PA 266. This act repealed and replaced MCLA 767-.27; MSA 28.967, whose ancestral roots reach back

to 1883. The pertinent language of the original act, 1883 PA 190, § 18, read:

"If any person in confinement, under indictment of [for] the crime of arson, or murder, or attempt at murder, rape, or attempt at rape, or highway robbery, *shall appear* to be insane, the judge of the circuit court of the county where he is confined shall institute a careful investigation; he shall call two or more respectable physicians, and other credible witnesses, and the prosecuting attorney to aid in the examination, and if it be deemed necessary to call a jury for that purpose, is fully empowered to compel the attendance of witnesses and jurors. *If it is satisfactorily proved* that such person is insane, said judge may discharge such person from imprisonment, and order his safe custody and removal to one of the State asylums, or to the Michigan asylum for insane criminals, after the latter institution is open for the reception of patients, at the discretion of such judge, where such person shall remain until restored to his right mind; and then if the said judge shall have so directed, the superintendent of the said asylum shall inform the said judge and prosecuting attorney so that the person so confined may, within sixty days thereafter, be remanded to prison and criminal proceedings be resumed, or otherwise discharged." (Emphasis supplied.)

In 1929 the language was changed slightly, 1929 PA 24, Ch VII, § 27, but the concept remained the same. Thus, immediately prior to 1966 the existing statute invested substantial discretion in the trial judge whenever an issue of competency was raised. A hearing on the issue was held only when the defendant *appeared* to be insane. Commitment was ordered only if incompetency was satisfactorily proven. Under these earlier statutes a mere request for a competency hearing made by the defense attorney was insufficient to generate these proceed-

ings, *People v Wilson,* 11 Mich App 721 (1968), as the court was not obligated by statute to grant such a request.[2]

The trial judge's discretion however was not so broad as to allow him to deny summarily an investigation into the competency of the accused in all cases. The United States Supreme Court, recognizing that a fair trial cannot be had if the defendant is mentally incompetent,[3] held in *Pate v Robinson,* 383 US 375; 86 S Ct 836; 15 L Ed 2d 815 (1966), that a sanity hearing must be held "where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial". See *People v Russell,* 20 Mich App 47 (1969). Thus, even under the earlier statutes a trial judge was required to conduct a competency hearing not only when the accused appeared to be insane but whenever the evidence before the court was such as to raise a bona fide doubt as to the mental competency of the defendant.

The 1966 act did not alter the basic law with regard to mental competency to stand trial but did enact significant procedural changes. We note initially, for example, that under the present scheme the issue of competency to stand trial is covered by a statute separate from that dealing with proceedings generated by an acquittal by reason of insanity (which is now MCLA 767.27b; MSA 28.966[12]). Thus, the procedure for determining the issue of mental competency no longer resides in two or three short sentences, as was the case with the earlier

---

[2] In fact, it appears that where no basis for such a hearing was demonstrated by the moving party, the trial judge would be abusing his discretion to conduct such a hearing. *Jett v Judge of Recorder's Court for Detroit,* 366 Mich 281 (1962). The petition in this case, however, was brought by the prosecutor. But see, *People v Chambers,* 14 Mich App 164 (1968).

[3] *Bishop v United States,* 350 US 961; 76 S Ct 440; 100 L Ed 835 (1956).

statutes noted above. Rather it is laid out in nine, somewhat detailed, sections, as well as in a court rule to be discussed further.

Section 1 of the statute continues the definition of incompetency from the earlier acts. Simply, a person is incompetent to stand trial if incapable of understanding the nature and object of the proceedings against him, of comprehending his own condition in reference to the proceedings, or of assisting in his defense in a reasonable or rational manner.

Section 2 first lists the persons who may petition the court for a competency proceeding and then defers matters of form and time to the court rules:

"The issue of competence to stand trial may be raised by the prosecuting attorney, defense counsel, by any interested person on leave of the court, or by the court on its own motion. The time and form of the procedure incident to raising the issue of competence shall be provided by court rule."

Note here that the present statute took effect in 1967, but the court rule, GCR 1963, 786, was not promulgated until 1969. Several cases arising under this statute were decided in the interim and will be discussed further below.

For further clarification of the issue, we set forth the three subsequent sections with appropriate emphasis supplied:[4]

"(3) *Upon a showing that the defendant may be incompetent* to stand trial, the court shall commit the defendant in the criminal case to the custody of the

---

[4] The remaining sections are not important to our discussion and may be briefly summarized. Section 6 provides for proceedings upon the regaining of competence by the defendant; § 7 provides for proceedings should it appear that the defendant may regain competence within a reasonable time; § 8 provides for the transfer of jurisdiction to the probate court to determine matters of commitment; and § 9 allows for credits against the sentence and for continuance of the statute of limitation.

center for forensic psychiatry or to any other diagnostic facility certified by the department of mental health for the performance of forensic psychiatric evaluation.   The commitment shall be for a period not to exceed 60 days.   Within that period the center or other facility shall prepare a diagnostic report and recommendations which are to be transmitted to the committing court.

"(4) Upon receipt of the diagnostic report and recommendations the sheriff shall immediately return the defendant to the committing court and the court shall immediately hear and determine the issue of competence to stand trial.   The diagnostic report and recommendations shall be admissible as evidence in the hearing, but not for any other purpose in the pending criminal proceedings.

"(5) If the defendant is adjudged to be incompetent to stand trial, he shall be committed to the department of mental health for treatment in a public institution approved for the purpose by the department of mental health."

An obvious and important change brought about by this new statute is the change of the time for commitment.   Under the earlier statutes commitment to a state institution for any length of time *followed,* rather than *preceded,* the investigation and hearing by the trial court.   The present sequence places the competency hearing *after* the commitment to the forensic center.   This appears to be the legislative substitute for the "two or more physicians" formerly appointed by the court.   The older system allowed the trial judge to exercise a modicum of control over the proceedings involved, and he could adjust his own docket accordingly.   The new method would seem, at first blush, to obligate the court to send the accused to the forensic center merely on motion. However, we think there is protection against tactical but unnecessary delays caused by frivolous alle-

gations of incompetency to be found in the opening phrase of § 3, which conditions the remaining proceedings "upon a showing that the defendant may be incompetent".

The importance of this phrase became clear as cases arising under the new statute made their appearance before this Court. *People* v *Kerridge,* 20 Mich App 184 (1969), *People* v *Hartford,* 25 Mich App 200 (1970), and *People* v *Kearns,* 25 Mich App 579 (1970), all affirmed the trial court's refusal to send the defendant to the forensic center because no "showing" of mental incompetency had been made. *Kearns* states the rule correctly (p 584):

"A bare assertion of defendant's incompetency to enter a guilty plea does not, of itself, constitute a sufficient 'showing'. *United States* v *Scherk* (ND Cal, 1959), 177 F Supp 793, 800. Rather, the trial court must be presented with information which would raise a 'bona fide doubt of the defendant's competency to waive his constitutional rights and plead or to stand trial.' *Wolcott* v *United States* (CA 10, 1969), 407 F2d 1149, 1151; *People* v *Russell* (1969), 20 Mich App 47."

However, all three of these cases were decided prior to the promulgation of GCR 1963, 786. Both *Kerridge* and *Kearns* make the unsupported suggestion that had this court rule been operative the results of the case might have been different. The *Kerridge* dicta is the more considered of the two:

"Section (2) of the statute, *supra,* states that the time and form of the procedure incident to raising the issue of competence shall be provided by court rule. Although the statute was effective in 1967, the court rule pertinent thereto was not promulgated until May 15, 1969 (GCR 1963, 786), and calls for a written motion before trial on behalf of defendant or the raising of the issue during trial only by

the trial court.  It appears to us that in the absence of the court rule, the trial court in the instant appeal was seeking the 'showing' called for in § 3 of the statute, *supra,* and that examination by a psychiatrist in the manner done satisfied the statute at the time of defendant's trial.  Had the psychiatrist stated him to be incompetent, the next step would have been referral of the defendant for forensic psychiatric examination.

"The court rule promulgated in 1969 now dictates the proper method for determination of a defendant's competency to stand trial.  There can be no argument as to retroactivity of a court rule and accordingly we hold that the actions of the trial court at the time of defendant's 1968 trial satisfied the statute.  The 1969 court rule now prescribes the approved method and must be followed when the question of defendant's competency to stand trial is properly raised."

The court rule, of which these cases foretell the coming, reads as follows:

"RULE 786.  MENTAL COMPETENCY HEARINGS IN CRIMINAL TRIALS.

"1. The issue of a defendant's competence to stand trial as defined in Act No. 266 of the Public Acts of 1966 may be raised at any time before trial by a written motion to commit the defendant to the department of Mental Health.

"2. The issue of defendant's competence to stand trial may be raised during trial only by the trial court on its own motion.

"3. If defendant is the moving party, the court shall order the defendant committed to a diagnostic facility certified by the department of Mental Health for the performance of forensic psychiatric evaluation for a period not to exceed 60 days from the date of the commitment order.

"4. If the motion is not made by the defendant, the court shall order the defendant to show cause

why he should not be committed to an approved diagnostic facility certified by the department of Mental Health for the performance of forensic psychiatric evaluation, for a period not to exceed 60 days from the date of the commitment order.

"5. When a defendant has been committed to an approved diagnostic facility certified by the department of Mental Health for the performance of forensic psychiatric evaluation, the motion to commit the defendant to the department of Mental Health shall stand adjourned pending receipt of the diagnostic report and recommendation of the facility.

"6. Where the issue of a defendant's competence to stand trial is raised during the trial by the court, the trial of the cause shall be continued or a mistrial declared as the court shall in its discretion deem appropriate.

"7. If upon the hearing on the motion the defendant shall be adjudged incompetent to stand trial, he shall be committed to the department of Mental Health pursuant to Act No. 266 of the Public Acts of 1966, and the pending criminal proceedings against such defendant shall stand adjourned until the further order of the court."

In reading this court rule, we note initially that it seems to go beyond the scope contemplated by § 2 of the statute. Section 2 directs that the court rule provide for the time and form of raising the issue of incompetency; GCR 1963, 786.1 and 786.2 clearly satisfy this requirement, but 786.3 and 786.4 do not appear to concern either the time or the form for raising the issue of incompetency. They overlay a matter covered in § 3 of the statute without, *and this is the important distinction,* the precautionary words "upon a showing". The implication arising from this court rule is that at *any time prior to trial* the

defendant may raise the issue of incompetency and the court *must* then commit the defendant to a diagnostic facility. Because the court rule lends itself to this interpretation, the defendant in the present case insists that the trial court had no discretion, but had to commit him to the diagnostic facility when the issue was raised before trial. We hold, however, for the reasons which are soon to follow, that when prior to trial a motion raising the issue of incompetency is made, commitment to a diagnostic facility will be mandated only if a sufficient showing of mental incompentency is made by the moving party, or when other evidence is before the court which raises a bona fide doubt as to the defendant's mental competency to stand trial.

We share the concern of the trial court that the defendant's interpretation of the court rule would deprive the court of a discretion which has existed throughout the history of the competency statutes, and which is continued today in § 3 of the present statute. If, on a mere empty allegation of incompetency made a week before trial, the defendant can delay matters for 60 days, he can likewise do so one hour before the trial begins, after the court date has been set, witnesses called, and the docket cleared of all other matters but this one case. The danger of allowing such a practice is obvious—it leaves the already monumental complexities of a functioning, understaffed, and overworked lower court further to the mercy of dilatory tactics by a defendant or his counsel. We cannot, from a practical standpoint, conclude that the court rule was meant to abrogate the requirement of a reasonable showing or the existence of a "bona fide" doubt.

Recently our Supreme Court had an opportunity to discuss thoroughly the relationship between a statute and a seemingly conflicting court rule. Some

of the insights provided in *Buscaino* v *Rhodes,* 385 Mich 474 (1971), are helpful towards resolving the apparent conflict between the court rule and a statute in this case (pp 478–479):

"Thus, it is clear that there is recognition of the need to grant the Supreme Court broad powers to make rules which will tend to increase the efficient administration of justice at a time when our courts are seriously overburdened. Our Court has recognized in numerous cases the validity of the rulemaking power, both under our present and former Constitutions. We have recognized that art 6, § 5, Michigan Constitution of 1963, and its predecessors, must be liberally construed in order to aid in the efficient administration of our judicial system.

"In *Jones* v *Eastern Michigan Motorbuses* (1939), 287 Mich 619, 630, our Court stated:

" 'While courts are very generally authorized by statute to make their own rules for the regulation of their practice and the conduct of their business, a court has, even in the absence of any statutory provision or regulation in reference thereto, inherent power to make such rules. *Fullerton* v *Bank of the United States* [1828], 1 Pet (26 US) 604 [7 L Ed 280]; *Van Benschoten* v *Fales* [1901], 126 Mich 176; *Wyandotte Rolling Mills Co.* v *Robinson* [1876], 34 Mich 428. This power is, however, not absolute but subject to limitations based on reasonableness and conformity to constitutional and statutory provisions. *Ward* v *Chamberlain* [1862], 2 Black (67 US), 430 [17 L Ed 319]; *Youngs* v *Peters* [1898], 118 Mich 45.' "

Although in *Buscaino* the Court concluded that since a matter of procedure was involved the court rule was controlling, this decision was reached by considering a general policy to expedite procedure and unclog the dockets. The defendant's interpre-

tation of the court rule in the present case would manifestly have the opposite effect and defeat this preferred policy.

Our Court has previously interpreted Supreme Court rules when that Court had not spoken, and where necessary to expedite the administration of justice.

In *Guastello* v *Citizens Mutual Insurance Co,* 11 Mich App 120 (1968), we recognized the importance of avoiding a rigid, inflexible posture towards our court rules, aware that "the lesson of history is that if the courts lose sight of the function of procedural rules, our new rules will become as unresponsive to their purpose as the old judicial and later statutory rules of practice which they replace".

If there is a way of resolving the apparent conflict between the statute and court rule without doing a violence to either, we feel it incumbent upon us to do so.

In the present case, the statute and court rule are so closely interrelated that their reconciliation requires no strained interpretation. The court rule must be read in the light of the statute to which it refers. *Masonite Corp* v *Martin,* 314 Mich 411 (1946); *Woodliff* v *Baker,* 279 Mich 356 (1937). This statute provides that the court rule should concern only matters of time and form, not substance. We will interpret GCR 1963, 786 accordingly.

The subsections of the court rule do not affect the substantive requirement of a showing. Although GCR 1963, 786.3 and 786.4 are written in mandatory terms, they may properly be read in a way which will not defeat the requirement of a proper showing and which still will comply with the procedural requirements of the rule.

The court rule does not specify who may bring a motion raising the issue of incompetency, yet we

know from § 2 of the statute that persons other than the defendant may make it. Thus, *this procedural matter is left to the rules.*

GCR 1963, 786.4 wisely provides that if the motion is made by a person other than the defendant then the defendant shall be given the opportunity to challenge that motion before he is committed.

If the defendant raises the issue of incompetency, then the court must commit the defendant to a diagnostic facility upon a requisite reasonable showing.

In either situation, the *sine qua non* is a reasonable showing that incompetence to stand trial may exist.

By keeping viable this statutory requirement of a showing, we work no injustice upon an accused. We do not attempt to prescribe a rigid rule as to the degree of showing to be made. We are confident that the trial bench will apply the requirement reasonably and rationally.

However, once the requisite showing of incompetency has been made the court *must* comply with the statute and commit the defendant. Court-appointed psychiatrists cannot be substituted therefor. This is what we read *People* v *Ledbetter*, 31 Mich App 160 (1971), to mean.

When we scrutinize the assertions in the present case, we see only the defense attorney's contention that he was having difficulty understanding his client. No evidence or testimony of any history or present manifestation of mental illness or mental incompetency was presented. Even so, the court *sua sponte* enlisted the services of a psychiatrist to examine the defendant. The results of this examination failed to show that a bona fide issue of mental incompetence existed.

We cannot but conclude that the essence of the involved statute and rule were assiduously respected

by the trial judge and that no prejudice to the defendant resulted.

The judgment of conviction is affirmed.

DANHOF, P. J., concurred.

T. M. BURNS, J. (*dissenting*). GCR 1963, 786.3 provides:

"If defendant is the moving party, *the court shall order the defendant committed to a diagnostic facility* certified by the department of mental health for the performance of forensic psychiatric evaluation for a period not to exceed 60 days from the date of the commitment order." (Emphasis supplied.)

The language of the court rule is clear. It states that when the "defendant is the moving party, the court shall order * * * [a] forensic psychiatric evaluation". It is my opinion that the language of the rule is mandatory and removes any of the discretion which the trial court has historically had over these matters.

While I am in sympathy with the result reached in the majority opinion and likewise fear the use of the above court rule as a dilatory tactic, it is my opinion that this Court is bound by the plain language contained therein.

I vote to reverse and remand for proceedings in accordance with GCR 1963, 786.3.